Dietrich & Capell v. Stebbins Brothers, Appellants.

**Construction of Contract:** DECLARATIONS OF AGENT. Where the correspondence constituting a contract for the purchase of restaurant fixtures, including a back case and counter, with show cases and drip board, specified the style of the back case, but did not specify the style or material of the other fixtures, or show that they were to be considered as a part of the back case, evidence of the declarations made by the purchaser to plaintiff's manufacturing foreman as to the style and material of the show cases, counter and drip board, was admissible, though such foreman had no authority to make such a contract for the sale of such fixtures, where plaintiff made his offer on memoranda made by the foreman.

SAME. While, ordinarily, one who offers to manufacture goods for another at a specified price without specifying the quality, will not be bound to furnish goods of a quality which his unauthorized agent led the other party to expect would be furnished, he is bound to do so, where the agent tells him what has occurred and he is led thereby to make the offer.

*Appeal from Van Buren District Court.*—Hon. M. A. Roberts, Judge.

SATURDAY, DECEMBER 12, 1896.

ACTION at law to recover the contract price of certain furniture manufactured and delivered to the defendants. Defense, that the furniture did not comply with the terms of the contract, and a counterclaim for damages. Verdict and judgment for plaintiffs. Defendants appeal.—*Reversed.*

*Wherry & Walker* for appellants.

*Work & Brown* for appellees.

DEEMER, J.—Plaintiffs are manufacturers of furniture and office fixtures, doing business in the city of Ottumwa. Some time during the fall of the year 1894, one T. A. Stebbins, a member of the defendant firm, which is engaged in the restaurant business at the town of Bonaparte, went to Ottumwa for the purpose of buying a back case, counter, drip boards, etc., with which to fit up their place of business. He proceeded to plaintiffs' office, and there found one Snook, who was foreman in plaintiffs' factory, but who, it appears, had no authority to make contracts with reference to any goods which had to be specially manufactured. Stebbins told Snook what he wanted, and together they visited different places in the city to inspect the character of plaintiffs' work, one of these being what is known as the "Ballingall Billiard Hall Annex." Snook made a memorandum of Stebbins' wants, which he afterwards submitted to Mr. Dietrich, of the plaintiff firm, who, it seems, had charge of the matter of making estimates for such work as the defendants wanted. At the time he submitted the memorandum to Dietrich, Snook informed him that he had taken Stebbins to various places where the plaintiffs had furniture which had been manufactured by them.

Stebbins returned to his home, and thereafter plaintiffs wrote him the following letter: "Ottumwa, Iowa, Sept. 20th, 1894. Messrs. Stebbins Bros., Bonaparte, Iowa—Gentlemen: In reply to your request when you were at our place, will give you the following estimate: 1 back case, similar to the one you saw in the Ballingall, 16 feet long, made of pine, with hard oil finish, with mirror about 30 inches by 100 inches, plain; 1 counter, 16 feet long, and about 30 inches wide and 50 high, pine, with oak top, same finish; 1 drip board for same, 9 feet long, with zinc top, and two tanks, 12 inches by 9 inches, and faucets; 1 counter,

for show case, 18 feet long, about 26 inches wide, and 26 inches high, with top open, except 4 feet on one end; 1 counter for same, 14 feet, same dimension as other. We can furnish you the above, all in good shape, f. o. b. Ottumwa, for the sum of two hundred and fifty dollars ($250.00). If top of drip board be of copper, add $5.00. Hoping to receive your order for the above, we remain, yours, truly, [Signed] Dietrich & Capell." On the same day defendants wrote plaintiffs the following:

"Bonaparte, Iowa, Sept. 20th, 1894. Capell & Dietrich, Ottumwa, Iowa—Gentlemen: We expected to hear from you to-day, with prices of counters, etc. Other bids are all in. We bought to-day marble slab, 99 inches, for butcher counter. Please make us price on counter to fit it, and let us hear from you at once. The lunch counter wants to be 45 inches high from top to bottom. Yours, truly, [Signed] Stebbins Bros."

In response to plaintiff's first letter, defendants wrote the following: "Bonaparte, Iowa, Sept. 22d, 1894. Dietrich & Capell, Ottumwa, Iowa—Gentlemen: Yours 20th at hand. We are quite surprised at your price. We did not expect it to be near so high, besides, the lunch counter was to be 20 feet long, not 16. We think 50 inches is too high, 45 inches from the floor to the surface on top is just right. Now, we will not buy the stuff only delivered in our building and set up. We wrote you on the 20th what our butcher counter would be. We have bought the slab, which is just 99 inches long. We want counter to fit it. We will make you this offer, which you must accept or decline at once, for the stuff described in your letter 20th, except the lunch counter is to be 20 feet as talked, and this butcher counter all delivered here and set up. We will give you $250 spot cash when the work is completed. Yours, truly, Stebbins Bros."

To which the plaintiffs replied as follows:

"Ottumwa, Iowa, September 24, 1894. Stebbins Bros., Bonaparte, Iowa—Gentlemen: Yours of 22d just at hand, and in reply say that we are sorry to say that we cannot accept your offer for the work as we have given you estimate on, but will make you another offer. We will make you the butcher counter and set the whole job up in your store for ($275) two hundred and seventy-five dollars. We can make you the job, by making it a little cheaper, and perhaps it might suit you as well, for $250; but we would have to cheapen it up just that much. This is reducing the price on the work some, as it will cost more than the $25 to make the one counter and set the job up. Hoping this may be satisfactory, and that we may receive your order for the above, we are, yours, respectfully, Dietrich & Capell."

Thereupon the defendants wrote the following:

"Bonaparte, Iowa, Sept. 25th, 1894. Dietrich & Capell, Ottumwa, Iowa—Gentlemen: Yours 24th at hand. We will accept your offer, and want the work at earliest possible moment. Don't make mistake in length of lunch counter. Yours truly, Stebbins Bros."

This is all the correspondence which passed between the parties relating to the contract, except some letters with reference to certain changes, and the time in which the work should be completed.

The defendants, in their answer, alleged that the work was to have been of the same quality and material as that in Opera House drug store, and the Arcade saloon, which was shown to Stebbins by Snook at the time he visited plaintiff's factory; that it was not as represented; and that, on account thereof, they were damaged.

At the trial defendants offered to prove the statements made by Stebbins to Snook as to the kind and character of goods he wanted. This evidence

was rejected by the court, and the defendants assign error.

In support of the court's ruling, it is insisted that it was not shown that Snook had authority to make a contract for the sale of the goods, nor that any statements made by him would be binding upon the plaintiffs. It is further claimed that the contract between the parties was reduced to writing, and that this writing, consisting of the letters above set out, is conclusive on the question as to what the contract really was. This last proposition is certainly correct, and if the whole contract is embodied in these matters, then parol evidence is inadmissible to vary or change it. By reference to these letters, it will be seen that they do specify the style, dimensions, and finish of the back case, but do not give the style of the counter, nor the style nor finish nor material of the drip-board, show case, and counter, unless it can be said that each and all of these were a necessary part of, and were included in, the order for the back case. Parol evidence was necessary, however, to establish this last proposition, and this became a question of fact for the jury.

It cannot be said, as a matter of law, that the whole contract was embodied in the letters. It is manifest that, unless it be found, as a fact, that the counters, drip boards, and show-case counters were part and parcel of the back case, and necessary to make it complete, the style, finish, and material of these articles rested in parol, and the defendants should have been allowed to show the kind they received the offer upon. The only means they had of doing this was to show what they stated to Snook when they visited the factory.

It is insisted, however, that Snook was not the agent of plaintiffs for the making of contracts. This is probably true. But he was their agent for the

purpose of securing a description of the goods wanted, or, if he had no express authority for so doing, the plaintiffs recognized him as such in this case; for they acted upon the information received by him in sending the offer to the defendants, and must be charged with his knowledge, the same as if he was expressly authorized. These are elementary principles, and require no citation of authority in their support.

It is true that the evidence referred to was admitted, but the court withheld his ruling, and he afterwards struck it out because of Snook's want of authority. The jury were also instructed that they could not consider any conversations between Stebbins and Snook with reference to the Arcade or Opera House drug store fixtures, because Snook had no authority in the premises. This took the evidence referred to out of the case. It is claimed, however, that these rulings were without prejudice, for the reason that Stebbins admitted that he told Snook he did not want anything as expensive as at the Arcade. We find, in examining the record, however, that this related to the back case, and not to the other articles purchased.

In the sixth instruction the court limited the jury to a consideration of those statements made by Stebbins to Snook, which were communicated to plaintiffs before the twentieth of September, 1894; and in the eighth struck out the evidence of Stebbins as to his statements to Snook, for the reason they were not communicated to the plaintiffs. For the reasons pointed out, these instructions were erroneous.

Other instructions are complained of, and defendants also contend that the court erred in not giving certain instructions asked by them.

What we have said sufficiently indicates our views regarding these matters, and we need not more specifically refer to them. Some other rulings on the

admission and rejection of evidence are complained of, but, as they are not likely to arise on another trial, we will not consider them. Our conclusions find support in the following cases: *St. Louis Refrigerator & Wooden-Gutter Co. v. Vinton Washing Machine Co.*, 79 Iowa, 240 (44 N. W. Rep. 370); *Farrar v. Peterson*, 52 Iowa, 420 (3 N. W. Rep. 457); *Eadie v. Ashbaugh*, 44 Iowa, 520; *Jackson v. Mott*, 76 Iowa, 263 (41 N. W. Rep. 12). For the errors pointed out, the judgment of the district court is REVERSED.