THE ST. LOUIS REFRIGERATOR AND WOODEN GUTTER COMPANY v. THE VINTON WASHING-MACHINE COMPANY.

1. **Evidence:** PAROL TO EXPLAIN WRITING : SALE : AGENCY. Plaintiff's agent orally offered to sell defendant ten carloads of "Star Poplar" lumber at a certain price. He knew the purpose for which defendant wanted the lumber, and was informed that nothing but dry lumber would answer, and he represented that

the grade known as " Star Poplar " would meet the requirement. " Star Poplar," however, was a grade that might be either green or dry. Afterwards, defendant wrote to plaintiff, stating the offer of the agent to furnish " Star Poplar," and accepting the offer, but saying nothing about the lumber being dry,—supposing, from the agent's statement, that that grade was always dry. After some hesitation plaintiff agreed by letter to furnish the lumber at the price named by the agent. Some of the lumber shipped was not dry, and defendant refused to receive any more of it. In an action for the price, *held* that, while the contract, as evidenced by the letters, was for " Star Poplar," which might be either green or dry, plaintiff was bound by the agent's representations *that* it was dry; and evidence of what the agent said was competent to show the kind of lumber which defendant had contracted for. (See *opinion* for citations.)

2.　**The Same: ESTOPPEL.** In such case, defendant was not estopped to deny that its letter expressed the whole contract as to the character of the lumber, though it omitted to say that it was to be dry; because plaintiff, by its authorized agent, had given defendant to understand that the expression " Star Poplar" always meant dry lumber.

*Appeal from Benton District Court.* — HON. L. G. KINNE, Judge.

FILED, JANUARY 31, 1890.

ACTION to recover a balance alleged to be due for lumber sold and delivered. Defendant pleaded a counter-claim. There was a trial by jury, and a verdict and judgment for defendant. The plaintiff appeals.

*Gilchrist & Whipple,* for appellant.

*G. W. Burnham,* for appellee.

ROBINSON, J.—The plaintiff sold and delivered to defendant six carloads of lumber, and seeks to recover a balance alleged to be due thereon of $259.72. Defendant admits having received the lumber, but alleges that a part of it was not of the kind and quality agreed upon and ordered, and claims damage for the alleged breach of contract. The verdict and judgment

in favor of defendant were for eighteen dollars, besides costs.

I. Appellee claims that a part of the agreement for the purchase of the lumber in controversy was

1. EVIDENCE: parol to explain writing: sale : agency.

verbal, and that it was made with an agent of plaintiff, named Cordry. Appellant contends that the agreement was wholly in writing, in the form of correspondence between the parties, carried on after the alleged agreement with Cordry was made, and that the court erred in permitting appellee to prove the Cordry agreement. That was made in October, 1885. At that time defendant was engaged at Vinton in the business of manufacturing washing-machines, and required dry poplar lumber of a particular description for that purpose. Cordry represented to it, in substance and effect, that the kind of lumber it desired was known as "Star Poplar;" that one-half of it was sixteen inches or more in width, and sufficiently good to furnish sides for the washing-machines; that the remainder of it was common, narrow lumber; that all of it should be "bone dry" when it was received by defendant; that it would be far superior to a pile at the factory door to which his attention was called, and that plaintiff did not manufacture so poor a grade as that. He was informed that defendant could not use any lumber which was not dry. It is shown that at that time there was a grade of lumber known in trade at St. Louis and in the South as "Star Poplar," and the evidence tends to show that the lumber shipped by plaintiff to defendant to fill the agreement in controversy was of that kind, but defendant had no knowledge of what was required to constitute that grade, excepting that derived from Cordry.

On the twenty-second day of October, 1885, defendant wrote to plaintiff as follows: "Your agent called on us yesterday to further furnish us with lumber designated as "Star Poplar," and proposed to sell us ten carloads at $18.50 per thousand, two per cent. off, delivered at St. Louis, and to be ordered by us in single carload lots at

such time as we may order; the entire shipment to be made in six months from date. Half of said lumber to be sixteen inches wide and upwards, and balance from seven to twelve inches and upwards; to be dressed on both sides, seven-eighths inch in thickness. This proposition was left by your agent for us to consider, which we hereby accept, expecting the shipment from West St. Louis. * * *" The plaintiff at first refused to recognize the agreement on the ground that the price should be twenty dollars per thousand, but November 2, 1885, it wrote to defendant as follows: "* * * Our Mr. Cordry says that he said 'he would submit the offer at the price you mention, but did not take any order, or state the order would be accepted at that price. But your letter seems to be very positive, and we know our Mr. Cordry to be careless, and we will ship you a car this week. * * *" The evidence tends to show that the first two carloads received by defendant were reasonably satisfactory; that the next four carloads were not so good as the lumber of Star Poplar grade was represented to be by Cordry, in that the proportion of wide lumber was less, and it was so wet as not to be in condition for use. The agreement for the remaining four carloads was then canceled. Appellant contends that whatever agreement the parties had prior to the letter of October 22, 1885, and the acceptance of its terms, it was in law merged in the written contract as expressed in the correspondence, and that the court erred in permitting the representations of Cordry to be treated as a part of the contract. It may be that in recognizing the contract and shipping the lumber the plaintiff had no actual knowledge of what Cordry had said, excepting of that part disclosed by defendant's letter. But Cordry's authority to bind the plaintiff cannot be questioned. The evidence shows that lumber of the grade in question may be either green or dry; that lumber is sometimes graded when green, and becomes Star Poplar when graded; that plaintiff had lumber of that grade in its yards when the

agreement was made, which was from two to twelve months old, of which some was green or wet, and some was dry. Plaintiff was chargeable with Cordry's knowledge of his representations, and his knowledge of the use for which the lumber was ordered by defendant. It appears that, although Star Poplar grade included both wet and dry lumber, it was not necessarily mixed. The letter of defendant ordered Star Poplar lumber, and we think it did not contradict the terms of the writing to show what Cordry had represented and agreed in regard to the kind of lumber in the grade ordered which should be sent. But for his participation in the making of the contract, plaintiff could have discharged its obligation by sending either wet or dry lumber of the grade named. But the contract was substantially made by Cordry, and ratified by plaintiff. It is, therefore, bound by all the provisions of the agreement, whether actually known to it or not. *Farrar v. Peterson*, 52 Iowa, 420; *Eadie v. Ashbaugh*, 44 Iowa, 520. The quality of lumber required by defendant was fully understood by Cordry. It was known to him, and constructively by plaintiff, that defendant could not use wet lumber. It is clear that defendant did not intend to contract for that kind of lumber, and plaintiff knew it. Therefore, to construe the agreement, as appellant contends it should be construed, would enable plaintiff to perpetrate a fraud upon defendant. The language of the correspondence is not such as to require that construction; hence it should be so construed as to carry into effect the real agreement and intent of the parties. See *Thompson v. Locke*, 65 Iowa, 432; *Pilmer v. Bank*, 16 Iowa, 322; *Merriam v. United States*, 107 U. S. 437, 2 Sup. Ct. Rep. 536; *Dayton v. Hooglund*, 39 Ohio St. 680.

II. It is claimed that defendant is estopped from asserting that the letter of October 22, 1885, did not

2. THE same: estoppel.

fully exhibit the terms of the agreement with Cordry, for that plaintiff believed it to contain a full statement of the terms proposed by its

agent, and acted upon that supposition in ratifying the agreement and shipping the lumber. But that theory ignores the fact, as claimed by defendant and proven, that Cordry was fully authorized to contract for plaintiff, and that he submitted a proposition to be presented to the board of directors of defendant, which was acted upon and accepted by that board, and that the letter in question was a notification to plaintiff that its offer had been accepted. Defendant had no reason to state in that letter that the lumber must be dry, for the reason that Cordry had represented that it would be dry, over a year old, and knew that defendant could not use it while green, while it does not appear that defendant then knew that the grade named ever included green lumber. The first two carloads corresponded with the representations of Cordry. Before the first car was shipped under the agreement in controversy, defendant wrote to plaintiff that it expected the car it was to ship that week would "prove, as Mr. Cordry stated, a higher grade" than they had theretofore had; thereby informing plaintiff that representations as to the quality of the lumber, other than the naming of its grade, had been made by Cordry. When the third carload was received by defendant it at once notified plaintiff that it was not satisfactory, and that it was to have dry, seasoned lumber, and hoped it would be able to ship perfectly dry lumber at once. Defendant complained of each of the carloads subsequently sent, reiterating its claim that the lumber was to be "bone dry," and when the sixth one came to hand refused to take any more of the kind sent. Under these circumstances, we are of the opinion that an estoppel was not shown. The letter of October 22, 1885, embodies the agreement of the parties, excepting the definition of the terms used therein to designate the lumber sold, and plaintiff was chargeable with knowledge of the kind which defendant had a right to demand.

III. Objections are made to portions of the charge to the jury. It might have been made more explicit in

some respects, and in one or two matters of minor import-
ance it may not have been quite accurate, but, taken as a
whole, we think it instructed the jury as to their duties
quite fully and fairly, and that plaintiff could not have
been prejudiced by anything of which it complains.

IV. It is claimed that the verdict was excessive.
There was evidence to sustain a verdict for about the
amount found by the jury. If it is too large, the excess
is merely nominal, and we should not be justified in
disturbing the judgment on that ground.

AFFIRMED.