FRANK ZELENKA, Appellee, v. PORT HURON MACHINERY COMPANY, Appellant.

**Pleadings:** AMENDMENT TO CONFORM TO PROOF: CONTINUANCE. It is the duty of courts to prevent as far as possible undue and unnecessary litigation, and to see that a trial is not delayed for merely technical reasons not conducive to the promotion of justice. To this end it was proper to allow plaintiff, in an action for conversion against a chattel mortgagee for alleged wrongful foreclosure, to amend his petition by alleging that one of the mortgages had been released, thus conforming the pleading to proof of that fact; and to deny a motion for continuance on account of the amendment, where defendant only claimed to be able to produce one witness who would deny the claim in the amendment, and plaintiff admitted that he would so testify if present.

**Agency:** AUTHORITY TO MAKE SETTLEMENT: RATIFICATION. Where a machine company sent a special agent to close a settlement with a buyer, on terms already tentatively arranged by a general agent, the buyer had the right to assume that the special agent had authority to allow reasonable deductions, claimed by him as a condition for giving more satisfactory security for final pay-

ment of the debt: But if this were not so the seller, having accepted the security and collected and retained the proceeds, can not thereafter repudiate the settlement.

**Conversion:** RECOVERY: MEASURE OF DAMAGES. The foreclosure and sale of property under a chattel mortgage, after receiving other security for the debt and agreeing to release the same in consideration therefor, amounts to conversion; and the mortgagor is entitled to recover the reasonable value of the property sold, regardless of the amount received for the same by the mortgagee at the sale.

**Agency:** AUTHORITY TO MAKE SETTLEMENT: APPLICATION OF DEBT DUE FROM AGENT. Conceding as a general rule that an agent can not pay his own debt by an allowance of a credit on the demand due his principal; yet, where it appears that the amount due from the agent was paid in cash to the debtor and formed a part of the cash payment made by him to the agent for his principal, the rule does not apply.

*Appeal from Polk District Court.*—Hon. Jesse A. Miller, Judge.

Tuesday, November 23, 1909.

The opinion states the case.  *Affirmed.*

*Dunshee & Haines,* for appellant.

*Berge, Morning & Ledwig* and *Spurrier, Mills & Perry,* for appellee.

Weaver, J.—Prior to the transactions in controversy the plaintiff had been for some time in the employ of the Port Huron Machinery Company as a salesman of farm implements. After leaving that service in 1902 he purchased from the company a traction engine at the agreed price of $1,275, giving his promissory note for the amount secured by chattel mortgage on the engine. Shortly afterwards, in June, 1902, plaintiff purchased from said company a secondhand threshing outfit for $806. In settle-

ment for this last purchase he gave the seller one note for $270, due December 1, 1902, and two other notes for $268 each, falling due, one December 1, 1903, and the other December 1, 1904. This debt was also secured by chattel mortgage; the note for $1,275 to contain a provision for a discount of ten percent if paid before maturity. On December 29, 1902, plaintiff paid the company on this first or larger note the sum of $600, but did not take up the $270 note, which was then past due. Thereafter, the company becoming somewhat insistent upon payment or security of its claims, a settlement or adjustment was arrived at, some of the terms of which are in dispute. The arrangement was made on August 10, 1903, at Lincoln, Neb., between plaintiff and one Pringle, defendant's general agent at Lincoln, and one Bacon, who was sent out by Pringle for that purpose. It is conceded that on this occasion plaintiff gave the company a mortgage on real estate sufficient to secure the sum of $1,034.38, represented by one note of $517.38 due January 1, 1904, and another of $517 due January 1, 1905. It is the theory of plaintiff that this note and mortgage represented and included the entire amount of his indebtedness to the company as found and determined upon at this settlement, except the last note of $268 given for the purchase of the threshing outfit, which by its terms still had about a year and a half to run before maturity, and was by agreement of the parties not included in the sum secured by the real estate mortgage. Excluding the note of $268 above mentioned, it is evident that there was at this time unpaid on the principal of plaintiff's debt for the engine $1,275 less $600, or a remainder of $675, and on the principal of his debt for the threshing outfit the sum of $538, or a total of $1,213, with some addition to each item for interest. The difference between this amount and the amount for which the note in settlement was given plaintiff accounts for by the assertion that he was credited with a discount of ten per-

cent, or $60, on account of the payment of $600, which had been made before it was due, and for a further sum of $40 or more, as balance due him for services rendered while in the company's employment, and for a small sum of money then and there paid to Pringle. The company denies that any part of the debt for the threshing outfit last purchased, except the first note for $270, was included in this settlement. It should also be said that the company claims that the real estate mortgage and notes secured thereby were taken by it as collateral only to the original notes, while plaintiff says that the company continued to hold the old notes as collateral only.

It will thus be seen that after this settlement there was owing from plaintiff to the company, according to his theory of the facts, the amount secured by the real estate mortgage and the outstanding $268 note due December 1, 1904. Soon after making the settlement plaintiff left Nebraska, having first arranged with a bank at Humboldt. in that state to pay off or take up the real estate mortgage he had given the Port Huron Company, and on November 8, 1904, the bank paid defendant the full amount of said mortgage indebtedness, $1,144.87.

It appears, however, that at the time of this payment by the bank the company, acting as it claims it had a right to do under the chattel mortgages given by the plaintiff at the time of his purchases, had already seized and sold both the engine and threshing outfit. From these foreclosures it realized over and above expenses $132 for the outfit last sold the plaintiff, which sum it credited on the first $268 note, while on the sale of the engine it realized the net sum of $300, which it claims to have indorsed upon the $1,275 note originally given for said property. It is the further claim of plaintiff that these foreclosures were irregular and wrongful, and made without notice to him or to his agent, the bank, and that the latter paid off the real estate mortgage in full before it discovered these

wrongful acts on the part of the company. He also alleges and swears that the release of the engine from the chattel mortgage lien was agreed upon as a part of the consideration upon which he consented to give the real estate mortgage. From this extended and somewhat informal statement of agreed and controverted facts a very brief statement of the nature of the issues made by the pleadings is all that is necessary in developing the questions which we have to consider on this appeal.

Plaintiff brings his action at law, stating his theory of his dealings with defendant as hereinbefore indicated, and alleges that by seizing and selling the property under the chattel mortgages aforesaid the company wrongfully converted the same to its own use to plaintiff's damage in a sum more than equal to the amount then due from him to said company, and that the sum paid by the bank was an overpayment which the company, as a matter of right and justice, should be required to repay, and he asks judgment accordingly. The defendant denies plaintiff's claim, and denies that the machinery sold under the chattel mortgages was reasonably worth more than the sum obtained therefor and credited upon the plaintiff's indebtedness. By way of counterclaim it asks judgment against the plaintiff for $151.64, which it alleges remains due on the notes given by plaintiff after giving him credit for all payments and for the proceeds of the foreclosure sales. To the counterclaim plaintiff replied, pleading much the same matter covered by his petition and other matters above recited, and which need not be here repeated. On trial to a jury there was a verdict in plaintiff's favor for $777.01, which the court refused to set aside, and defendant appeals from the judgment rendered thereon.

I. The original petition in this action, while alleging that the foreclosure of the chattel mortgages was wrongful and constituted a conversion of the property sold thereunder, did not allege that either of said mortgages had

been released before such alleged wrongful conversion had been effected, but on the trial plaintiff was permitted, without objection, to offer and introduce evidence to the effect that one of the considerations upon which he gave the real estate mortgage was the release of the chattel mortgage on the engine. At the close of the testimony leave was asked and granted to amend the petition to conform the issues to the showing thus made. Defendant objected to the amendment as being filed out of time and presenting a claim which was a surprise to defendant, and that to prepare a defense time was required. It also moved to strike the evidence to conform to which the amendment was allowed. The motion to strike the evidence was denied, and the amendment allowed to stand. Thereupon defendant moved for a continuance to allow it to procure the testimony of Pringle, who would deny the story told by plaintiff, as well as testify to other relevant matters. The plaintiff having admitted that the witness if present would testify as stated, the motion for continuance was overruled. Error is assigned on the rulings of the court respecting this feature of the trial. The assignment can not be sustained. It has often been held to be the duty of courts to prevent, so far as possible, all undue and unnecessary litigation, and, when an action is once brought to trial, to see that its result is not delayed on grounds which are merely technical and do not conduce to the promotion of justice. With a view to that end our modern system of practice, especially as it prevails in this state, recognizes and upholds the right of amendment to petition or answer at almost any stage of the proceedings between the appearance of the parties to the action and the entry of final judgment therein, leaving to the court power to check any tendency toward abuse of this right by attaching such reasonable conditions to its exercise as shall seem proper under all the circumstances in the given case. Our

*1. PLEADINGS: amendment to conform to proof: continuance.*

statute expressly provides for the right to amend pleadings to conform to the testimony developed on the trial. Code, section 3600. Every litigant who enters upon a trial does so with full knowledge of this statutory right which his opponent may avail himself of if the record shall indicate proper ground for its exercise; and, if either party permits the other without objection to put in evidence facts which indicate the necessity of an amendment to a pleading in order to have the real merits of his controversy considered and decided, no wrong is done if objection to such amendment is overruled. This is especially the case where the court, in order to avoid undue advantage to the party amending, gives the other party opportunity to produce additional evidence if the showing therefor appears reasonable. In the case at bar the evidence was introduced, as we have said, without objection. It was clear and to the point that one of the conditions of the settlement in August, 1903, was the release of this mortgage. The defendant had given its own version in detail of that settlement, and it was not shown that any witness except Pringle could deny the plaintiff's claim in this respect, or give any competent evidence relevant thereto other than what was already in the record. What could be shown by Pringle it was conceded he would testify to, and defendant had the benefit of it. There was no abuse of discretion by the trial court in these rulings.

II. The other assignments of error argued relate to the proposition that plaintiff was bound to show the authority of Pringle and Bacon as defendant's agents to make the settlement of August 10, 1907, on the terms

2. AGENCY: authority to make settlement: ratification.

claimed by plaintiff, and, having failed so to do, he should be charged as a matter of law with the full amount of the notes given by him, without any diminution on account of the credits which he testifies were allowed to him at the time he gave the real estate security. The law governing

the rights of a third party dealing with an agent is too
narrowly construed by counsel.   In the first place, conced-
ing, as argued, that the agent Bacon, who went to Lin-
coln to assist in closing the transaction, was sent for that
special purpose, and therefore to be classed as a special
agent, the plaintiff in making settlement with him had the
right to assume that he was . clothed with all the power
necessary to that end.   He was not engaged in collecting
the debt, and therefore without authority to accept any-
thing but money in payment.   He was there to make set-
tlement on terms already tentatively arranged between
plaintiff and the general agent, Pringle, and to obtain
more satisfactory security for the final payment of the
debt; and certainly it would be within the ordinary scope
of such an agency to allow reasonable credits and deduc-
tions claimed by the plaintiff if thereby he could induce
the execution of a mortgage which made safe and good a
debt which, as it stood, was regarded as of doubtful and
uncertain value.   Moreover, the record makes it quite clear
that the settlement was in fact made with Pringle, a gen-
eral agent for the defendant, who reported the result to
the house, and that Bacon's part in it was of an incidental
character.   But however this may be, the defendant ac-
cepted the result of this adjustment, whether made with
Pringle or Bacon, or with both, received the notes and
mortgage thus procured, and has collected and retains the
proceeds thereof.   Having taken the fruits of the settle-
ment, it can not be heard to repudiate the agreement by
which it was obtained.   *Eadie v. Ashbaugh,* 44 Iowa, 519;
*Farrar v. Peterson,* 52 Iowa, 420.   These cases have been
followed by this court in at least a score of instances,
among the later of which are *Moyers v. Fogarty,* 140 Iowa,
701; *Chamberlain v. Brown,* 141 Iowa, 540; *Lull v. Bank,*
110 Iowa, 542; Dorr v. Dudley, 135 Iowa, 20.   Applying
this principle of law to the case before us, it leaves the
controversy to turn upon the facts as to the terms of the

agreement between the parties at the time the real estate security was given. Upon this question it is not contended, nor indeed can it be, that the verdict of the jury is without substantial support in the evidence. We do not therefore attempt any review of the testimony on this point.

The court withdrew from the jury so much of plaintiff's claim as was grounded on the chattel mortgage foreclosure on the threshing machine outfit last sold him, but submitted the claim so far as it pertained to the alleged wrongful seizure and sale of the engine under the mortgage which plaintiff alleges was satisfied and discharged by the giving of the real estate security. The plaintiff has not appealed from the ruling against him in this respect, and the record fully justifies the court in its action respecting the engine. If defendant undertook to release this chattel mortgage in order to secure real estate security, the subsequent seizure and sale of the engine was tortious, and plaintiff was entitled to recover its full reasonable value without regard to the actual amount realized therefrom by the defendant.

3. CONVERSION: recovery: measure of damages.

III. Appellant avers in argument that among the items of credit which plaintiff says were allowed him in the settlement was a matter of about $60, for which the agent Pringle was individually indebted to plaintiff, and it is urged that under no theory of the case can there be any presumption of authority in the agent to pay his own debt by the allowance of credit upon a demand due his principal. The abstract correctness of this doctrine may be conceded as broadly as stated, but the record does not seem to fully bear out counsel's statement of facts. It appears without dispute that Pringle did owe plaintiff a small sum of money, and shortly before the settlement he had written plaintiff, asking him if he should pay the debt direct to him, or to the company to apply on the in-

4. AGENCY: authority to make settlement: ratification.

debtedness of plaintiff. Plaintiff testified that the matter was arranged in the settlement. His statement as to the details of the transaction in this respect is not entirely clear, but it is open to the construction that the debt was there settled by Pringle in cash, and that the money as realized constituted part of the cash payment which plaintiff claims then to have made. If this be so, then the rule of law appealed to has no application. The showing of error concerning this comparatively small item ought to be clearly made to justify a reversal on that account.

The verdict of the jury is supported by the evidence on the part of the plaintiff which, in some material respects, finds corroboration in the testimony offered in defense, and we can not say that it does not work substantial justice between the parties. No prejudicial error is shown, and the judgment appealed from is *affirmed*.