SECURITY SAVINGS BANK, Appellee, v. J. E. HAMBRIGHT, Appellant.

**BILLS AND NOTES:** Execution and Delivery—Conditional Delivery. 1 As between the bank payee and the maker of a note, it may be shown that the note was given to represent the purchase price of sufficient shares of the bank's stock to enable the maker to legally act as the bank's cashier, and on the condition that payment would not be called for, and that the note would be surrendered when the maker ceased to act as such cashier.

**PRINCIPAL AND AGENT:** Authority—Ratification. Principle re- 2 affirmed that a principal may not confine his ratification of an agent's unauthorized act solely to the features thereof which are advantageous to the principal.

*Appeal from Dallas District Court.*—LORIN N. HAYS, Judge.

MAY 12, 1923.

ACTION in equity, to recover upon a promissory note and to enforce a lien for the payment thereof upon certain shares of bank stock. Decree as prayed, and defendant appeals.—*Reversed.*

*George J. Dugan* and *Lyle W. Maley,* for appellant.

*Stanley Trevarthen,* for appellee.

WEAVER, J.—The petition alleges the making and delivery by defendant of a promissory note, payable to plaintiff's order,

under date of February 6, 1918, for the sum of $850, payable one year after date. It further alleges that, to

1. BILLS AND
NOTES: execu-
tion and deliv-
ery: conditional
delivery.

secure payment of said note, defendant pledged to plaintiff five shares of the capital stock in said bank. Judgment is asked for recovery of the amount appearing to be due on the note, and for the foreclosure of the lien of the pledge.

Defendant admits signing the note, but otherwise denies all the allegations of the petition. The answer further alleges that the note was given in renewal of one of an earlier date, and that the only consideration therefor was to make defendant a nominal stockholder in the bank, and thereby enable him to qualify and become the bank's cashier; and that this was done upon the express condition and understanding that the note should be carried by the bank without payment and without interest, so long as defendant retained the position of cashier, and that, in the event that his said relation with the bank should thereafter be severed, the note would be canceled and returned to him, and the shares of stock turned back to the bank. He further alleges that the shares of stock were never delivered to or received by him; that he has since left the bank's service; and that his obligation on the note, if ever there was any, has been canceled.

Plaintiff denies the allegations of the answer. Upon trial of the issues joined, the court found for the plaintiff, and defendant has appealed.

To a great extent, the material facts are not the subject of dispute. Shortly before the date of the original note, of which the one in suit is a renewal, a controlling interest in the plaintiff bank came into the ownership or control of one Davis, who was also made the bank's president. A little later, the plaintiff bank absorbed another local bank, of which the defendant, Mr. Hambright, was cashier, but not a stockholder. When the merger had been effected, Davis suggested the desirability of securing Hambright's services as cashier of the plaintiff bank. This bank being organized under the statute, it required the ownership of five shares of stock to qualify a person to take the position, and Hambright was reluctant to make the investment, saying that he had no money for that purpose. The bank's author-

ized capital had already been fully subscribed, and there were no unsold shares in the treasury.  Thereupon, Davis proposed that Hambright make his promissory note for the amount of the value of five shares of the stock, saying that such note would be carried indefinitely, without interest and without payment, so long as Hambright continued to serve as cashier, and that, in the event that the connection of the latter should be severed, the stock could be returned to the bank, and the defendant's note canceled and returned.  To this the defendant agreed, and gave his note accordingly.  He was made cashier, and served as such until shortly before the commencement of this action, when Davis disposed of his stock and removed from the state, and Hambright withdrew from the position of cashier.

As we have noted, there was no unsold treasury stock at the inception of these transactions, and defendant denies that any was ever delivered to him, and it does not appear that he ever claimed or received any dividends therefrom.  There is a somewhat indefinite showing that, at the outset, Davis told defendant that, while there were no unsold shares in the treasury, there was a probability that some one or more of the existing stockholders would be willing to dispose of their shares, in which event such shares could be 'or would be utilized to supply the need to perfect defendant's qualification for his position as cashier.  There is also evidence tending to show that thereafter, Davis, or the bank, acting for him, did take in five shares of stock from another stockholder, and that afterward a certificate therefor was filled out to defendant, who signed a receipt therefor; but it fairly appears that no certificate was ever delivered to him. It also appears without dispute that, on the strength of the qualification thus acquired, defendant continued to serve as cashier from year to year, voting the stock, taking the part, and performing the duties usually expected from such officer.  The note given by him was held and carried by the bank among its bills receivable, and, so far as shown, no demand was ever made upon defendant for its payment, principal or interest, until after he had vacated the position of cashier.  After about three years of such service, he left the bank, and at about the same time, or a little later, Davis also severed his connection therewith.  On leaving the bank, defendant asked Davis for the surrender of

the note, and was told that he (Davis) would see that it was taken care of; and defendant, in reliance upon such promise, allowed the matter to rest, without further action on his part.

The deposition of Davis as a witness, taken in a foreign state, and put in evidence, quite fairly and fully corroborates the defendant's version of the transaction in which the note was given, and of the alleged conditions upon which it was to be surrendered. On the part of the bank, its directors testify in denial of any knowledge or notice of any condition affecting the validity or obligation evidenced by said note, and deny that its board ever authorized or recognized such deal as defendant and Davis claim was made. On trial of the issues joined, the court below, while apparently not discrediting the testimony of defendant and Davis, held, in substance, that the deal so shown was, at most, a private or personal transaction between the individuals, Davis and Hambright, and not, in fact or in legal effect, between Hambright and the bank; and that such agreement in no manner affected or avoided the right of the bank to enforce payment of the note. From this judgment the defendant appeals.

The question thus presented is not without its troublesome features. It is to be noticed at the outset that the issues do not involve any application of the rules of law which have been devised for the protection of innocent holders in due course of commercial paper. The plaintiff bank is not an indorsee, holding title to the paper. It is the original payee, seeking to enforce payment of a note made payable to itself, obtained and received through the agency of its president and principal stockholder, who was its executive head, and who testifies that in such transaction he was acting for and in its behalf. The question then arises whether the plaintiff may refuse to recognize the conditions attached to the paper by the act of its president, who negotiated the deal, and at the same time insist upon the legal obligation of the note so obtained. Let it be admitted, as an abstract proposition of law, that Davis was not the bank, and that, without the authority or approval, express or implied, of the board of directors, he could not bind the bank to a recognition of the agreement negotiated by him with the defendant; yet a bank, no less than a private individual, is subject to the rule which is as sound in law as in morals, by which the principal

who ratifies or accepts the benefit of an unauthorized act of its agent takes it burdened with the conditions and qualifications which would attend it in the hands of the agent himself; or, to state it in plainer terms, the principal cannot ratify so much of the unauthorized act of the agent as it thinks to its advantage and repudiate the remainder. See *Eadie, G. & Co. v. Ashbaugh,* 44 Iowa 519; *St. Louis Ref. & W. G. Co. v. Vinton Wash. Mach. Co.,* 79 Iowa 239; *Moyers v. Fogarty,* 140 Iowa 701; *Chamberlain v. Brown,* 141 Iowa 540, 553; *Zelenka v. Port Huron Mach. Co.,* 144 Iowa 592, 599; *First Nat. Bank v. Athey,* 188 Iowa 330, 336.

2. PRINCIPAL AND AGENT: authority: ratification.

There is no evidence whatever that defendant borrowed the purchase price of the stock from the bank, or that any pledge of the stock to secure payment of the note was made or asked or demanded. The truth of the testimony of the defendant and Davis, the only persons having immediate and original knowledge of the facts, is undisputed. As between the original parties and persons charged with notice, the delivery of a promissory note may be shown to have been made subject to conditions, or for a special purpose only. Section 3060-a16, Code Supplement, 1913. That the note sued upon in this case was delivered upon condition, and for a special purpose only, is well established. The contention that the deal made by Davis and defendant was a personal transaction between them does not seem to be borne out by testimony, or to be fairly implied from the circumstances. So far as appears, Davis had no interest in having defendant made cashier, other than his interest in the bank which he undertook to represent, and he reaped no benefit or profit therefrom, except the promotion, as he evidently believed, of the best interests of the bank by having for its cashier the defendant, a man of experience in that line, having the possible prestige derived from his recent connection with the other bank which had just been merged with the plaintiff.

So far as can be gathered from the record, there can be no doubt that both Davis and Hambright regarded the deal as a bank transaction, and the note as being held by the bank subject to the conditions upon which it was originally executed; and in our judgment, the defense was sufficiently made out. It follows that the decree below must be reversed.

In closing, we confess our inability to understand on what theory the suit was brought and maintained as an equitable action. It is a simple action for recovery upon a promissory note,—an action at law,—and the defense neither pleads nor tenders an equitable answer. The claim made in the petition of a pledge of or lien upon the shares of stock is without any support whatever in the testimony, and its allegation seems to have been designed to serve as a colorable excuse to frame an issue upon which to "side step" a trial at law, without having any evidence to offer in its support.

For the reasons stated, the judgment below is—*Reversed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.