COMMUNITY SAVINGS BANK, Appellee, v. M. H. GAUGHEN, Appellee, CITY NATIONAL BANK of Clinton et al., Appellants.

No. 44790.

JANUARY 16, 1940.

REHEARING DENIED JUNE 20, 1940.

Smith & O'Connor and D. D. Murphy & Son, for appellee.

Miller & Claussen and P. B. Holleran, for appellants.

MILLER, J.—The pleadings herein are quite voluminous and the facts are unusual. Before undertaking to set forth the issues, it would seem advisable to first state certain facts shown by the record without dispute.

Plaintiff is a state bank at Edgewood, Iowa, and the defendant bank is a national bank at Clinton. Defendant Gaughen was, during 1936, cashier for plaintiff. Defendant Anderson was, during 1936, until the latter part of November, president for defendant bank.

While Gaughen was acting as cashier for plaintiff, he was also engaged in an automobile loan business known as the Automobile Finance Company. He made default at the trial and his whereabouts were then unknown. The evidence does not show his version of the transactions involved. From the evidence introduced, it would appear that he was, without question, guilty of unlawful conduct while acting as plaintiff's cashier and defaulted for a large sum of money. The difficulties presented by this litigation arise through the fact that Gaughen undertook to combine his relations as cashier for plaintiff with his private finance business. In August 1936 Gaughen opened an account for the plaintiff with the defendant bank. His manipulation of that account has resulted in this litigation.

On September 14, 1936, Gaughen entered on plaintiff's books a debit of $25,000 to defendant bank and credited plaintiff's bond account with $25,000. On September 19th he wrote Anderson, asking for a temporary showing of credit of $25,000 for not to exceed ten days, that the permanent financing was all arranged, if the deal went through, that he did not have the required collateral and was enclosing 70 shares of stock in plaintiff's bank owned by himself, his wife, his father and his mother-in-law, and, in order that the loan would not go sour, he was enclosing an undated draft to cover the principal. He enclosed with the letter said stock, his note for $25,000 and an undated sight draft for $25,000 on plaintiff's account with defendant bank. September 22d the note was entered on defendant's books. The draft and stock were deposited as collateral for plaintiff's account and a deposit slip showing the deposit of $25,000 in plaintiff's account was sent to Gaughen.

On October 5, 1936, Anderson wrote Gaughen that the note had matured October 3d and suggested that it would be well to clean up the deal. On October 16th Gaughen wrote Anderson to charge up the deal and enclosed his personal signed check in blank to be filled out for the amount of interest, asking that Anderson make it as reasonable as possible. On the same day, defendant bank charged the draft to plaintiff's account, filled in the interest for $25, canceled the note on its books and re-

turned the note to Gaughen. However, Gaughen made no entry on plaintiff's books of the $25,000 draft or the interest.

On November 7, 1936, Gaughen executed another demand note for $25,000 and sent the same to defendant bank with an undated $25,000 draft on plaintiff's account with defendant. These two instruments are recorded on defendant's books on November 13th, but do not show on plaintiff's books. On November 27th the second sight draft was charged by defendant bank to plaintiff's account and the note was returned as paid.

The correspondence by Gaughen and the deposit slips did not appear in plaintiff's files, but were found by bank examiners. Some of the monthly statements of the defendant bank to the plaintiff were not in the files, but were produced later by Gaughen.

Anderson ceased to be president of defendant bank the latter part of November 1936, but stayed with the bank for a week or ten days thereafter. When Gaughen's defalcations were discovered by plaintiff in January 1937 Gaughen turned over to plaintiff certain property on his indebtedness and executed an order for the defendant bank to deliver to plaintiff the bank stock which had been given as collateral. This stock was surrendered by defendant bank to the plaintiff together with the auto finance paper also held by defendant as collateral upon plaintiff paying the defendant $18,000 to satisfy Gaughen's notes to defendant amounting to $18,430.

On January 27, 1937, plaintiff's books showed overdrafts amounting to $13,220.29, of which one was by the Auto Finance Company in the sum of $1,762.56, and one by Gaughen personally of $8,418.05. Plaintiff's books also showed a deposit with defendant bank amounting to $38,924.93, whereas defendant's books showed a deposit of $25,000 less than that sum.

In plaintiff's petition, plaintiff alleges that the defendants conspired together to use the assets and credits of plaintiff for personal and private purposes, conspiring and agreeing together that Gaughen, while purporting to act as plaintiff's cashier, would wrongfully appropriate to his own use and to the use of his codefendants, assets of the plaintiff, would conceal such misappropriations by transferring to defendant bank for

the apparent credit of plaintiff funds of plaintiff and notes of Gaughen and also personal notes of Gaughen, would balance said credits on plaintiff's books by misappropriating equal amounts of plaintiff's assets, thereby enabling the defendants to take assets of the plaintiff in exchange for Gaughen's notes, keeping the accounts sufficiently large to protect obligations of Gaughen so discounted, that, to accomplish this purpose, an undated sight draft drawn by Gaughen on said account of plaintiff, payable to the defendant bank, would be at all times held by defendant bank in an amount sufficient to cover Gaughen's obligations in the event of his default; that plaintiff had no knowledge of such conspiracy or the acts committed pursuant to it; that defendant collected upon collateral securities deposited by Gaughen pursuant to such conspiracy, and applied the proceeds upon obligations of Gaughen; that two sight drafts were deposited by Gaughen with the defendant, each for $25,000; the first one, on September 19, 1936, which was undated, was not entered on plaintiff's books and was wrongfully paid on October 16th by the defendant bank pursuant to such conspiracy and the proceeds thereof wrongfully applied to the payment of a personal note of Gaughen. The second draft was also undated, was delivered November 13, 1936, with a note of Gaughen, and was not entered on plaintiff's books. On November 27th defendant bank charged and depleted plaintiff's account for the sum of $25,000 without plaintiff's knowledge, consent or authority, pursuant to such conspiracy and for the benefit of defendant bank, and, accordingly, defendant bank holds $25,000 as trustee for the plaintiff. The prayer of the petition was that a constructive trust in favor of the plaintiff in the sum of $25,000 be established and impressed upon the funds of the defendant bank and for an order that the defendant restore the same to the account of plaintiff, subject to plaintiff's order and direction; that defendant bank be held to an accounting and that judgment be entered for the amount found due the plaintiff.

The answer of defendant bank is in four divisions of which division I is a general denial.

24

Division II of the answer asserts that Gaughen needed capital in his loan and finance business, borrowed money from defendants on his personal notes, secured by notes and conditional sales contracts of the automobile purchasers; the notes were discounted and at Gaughen's direction deposited in the account of plaintiff bank with defendant bank. The line of credit began with a loan of $7,500 on August 24, 1936, increased by new loans until ultimately retired. Interest was paid by checks of Gaughen on his personal account in plaintiff's bank. Gaughen agreed to and did keep collateral amounting to 20 percent more than the amount of the loans. Gaughen was a defaulter to plaintiff. Such fact became known to plaintiff; plaintiff and defendant banks went over the loans, discount payments and all matters connected therewith. The accounting culminated on February 9, 1937, when there was found to be due defendant bank on Gaughen's notes the sum of $18,430, on which defendant held collateral amounting to $23,000. With Gaughen's consent, the plaintiff paid the defendant $18,000 and defendant delivered to plaintiff Gaughen's notes and the collateral. The plaintiff has collected on such collateral the sum of $22,000. When this settlement was made the plaintiff knew of the claims now asserted, said nothing of them, but compromised the claims at a profit of $4,000 to plaintiff and plaintiff is now barred and estopped to assert the claims now made.

In division III of the answer, it is asserted that prior to September 19, 1936, Gaughen, while cashier of plaintiff, had appropriated to his own use, assets of plaintiff amounting to $25,000 and concealed the same by false entries on plaintiff's bond account. On September 14, 1936, Gaughen caused to be fictitiously credited to said bond account $25,000 which was debited to plaintiff's account with defendant without depositing $25,000 with defendant, thereby concealing his shortage with plaintiff. To cover the fictitious character of such debit, Gaughen planned to secure from defendant a loan of $25,000 and falsely and fraudulently represented to the defendant that he was solvent, had property of the net worth of $22,000, was in need of a showing of credit of $25,000 for not more than ten days, that

the permanent financing had been arranged if the transaction went through, and delivered to the defendant his note for $25,000 on September 19, 1936, with 70 shares of stock in plaintiff's bank and a sight draft; that the defendant relied upon the representations of Gaughen as being true when they were in fact false, accepted the collateral and entered the note as a deposit in favor of the plaintiff. On October 16th Gaughen, still planning to conceal his shortages, wrote defendant that the deal had not materialized, but it might be needed later, instructed defendant to charge up the $25,000 note, but to hold the stock and enclosed a blank check to cover the interest. Defendant filled in the amount of the interest, $25, sent the check through, returned Gaughen's note to plaintiff and charged plaintiff's draft to plaintiff's account. When the draft was so charged, no money was in fact withdrawn from plaintiff's account. On November 13, 1936, Gaughen wrote defendant he needed accommodation for $25,000 for a short time, sent his note for that sum and an undated draft on plaintiff's account in like amount. Defendant was still deceived by Gaughen's false and fraudulent representations, accepted the loan, deposited the draft with the stock as collateral, entered the note as a bill receivable, and credited plaintiff's account for $25,000. Gaughen, pursuant to his scheme, permitted said credit on defendant's books to reconcile the fictitious debit which he had entered on plaintiff's books. On November 27th the draft was charged to plaintiff's account and the note was returned to plaintiff. Defendant was deceived by the fraud practiced upon it by Gaughen, acting as cashier for plaintiff, and had the right to recapture the funds thus wrongfully credited to plaintiff by defendant, as a result of said fraudulent conduct on the part of Gaughen. The loans were made upon an offer of Gaughen that they be secured by deposited drafts on plaintiff's account with defendant and plaintiff cannot claim the benefit of the credit of such loans and also reject the terms and conditions upon which they were made and, accordingly, plaintiff is barred and estopped to claim credit for the loans and deny defendant's right to the security of the drafts and the right to charge the drafts on plaintiff's account.

Division IV of the answer asserted that defendant bank sent to the plaintiff monthly statements of plaintiff's account with the defendant, each monthly statement showing all of the items of debit and credit appearing in plaintiff's account, and each monthly statement was received by plaintiff and plaintiff acknowledged receipt of same, and that the same was correct.' The monthly balances shown by such statements in 1936 included the following: October $13,092.65; November $24,992.17; December $18,864.76; and in 1937: January $18,629.73; February $4,845.74; March $4,996.72; and the April statement showed that the accounts balanced. The prayer of the answer was that the petition be dismissed.

Defendant Anderson filed an answer in the form of a general denial and also asked that the petition be dismissed.

When the matter came on for hearing, counsel for defendant bank requested that the court proceed first to determine whether or not the plaintiff was entitled to an accounting. This request of counsel was granted. Evidence was introduced and the matter being submitted, the court found that on September 22, 1936, Gaughen borrowed the sum of $25,000 from defendant bank on his own personal note, used the sum to pay off his own defalcations and debts to plaintiff, placing the same in the account of plaintiff in defendant bank, which account was over $25,000 short for four days just preceding September 22, 1936, due to the appropriation of assets of the plaintiff to Gaughen's personal use; that on October 16, 1936, the defendant bank took from the account of plaintiff the sum of $25,000, through an illegal and unauthorized draft, which sum is still held by defendant bank and is the property of the plaintiff and held in trust for plaintiff; that the matters pleaded in divisions III and IV of the answer of defendant bank do not constitute a defense and are not a bar to plaintiff's recovery; that plaintiff is entitled to an accounting and the cause was continued until January 25, 1939, for the purpose of taking further testimony as to the accounting and for the entry of final judgment and decree. Before the date set for such hearing, the defendant bank perfected an appeal to this court from such ruling.

The evidence introduced at the hearing herein is voluminous and covers a wide range. We do not undertake to review it at this time for three reasons: (1) It would unduly prolong this opinion, (2) it would add confusion rather than clarity to the opinion, (3) it does not seem necessary to a determination of the decisive questions in the case. Accordingly, we undertake to set forth the legal propositions which appear to us to be decisive and will discuss the facts shown in the record as they pertain to such propositions.

■ I. Much has been said in argument about the allegations of a conspiracy. However, the issue on the existence of a conspiracy is not determinative. This is obvious from the holding of this court in the case of Olmsted v. Maryland Cas. Co., 218 Iowa 997, 253 N. W. 804, wherein, at the outset of the opinion, it is stated as follows:

"This action is based upon a conspiracy. The appeal can be disposed of by an examination of the facts for the purpose of ascertaining whether anything was done pursuant to the alleged conspiracy which is actionable. This court is committed to the rule that a conspiracy cannot be the subject of a civil action unless something is done pursuant to it which, without the conspiracy, would give a right of action. Beechley v. Mulville, 102 Iowa 602, 70 N. W. 107, 71 N. W. 428, 63 Am. St. Rep. 479; DeWulf v. Dix, 110 Iowa 553, 81 N. W. 779; Jayne v. Drorbaugh, 63 Iowa 711, 17 N. W. 433; Dunshee v. Standard Oil Co., 152 Iowa 618, 132 N. W. 371, 36 L. R. A. (N. S.) 263."

Applying the above pronouncement, which as indicated is sustained by numerous holdings of this court, it is readily apparent that, under the record herein, the important factor is that the petition asserts a conspiracy to defraud and the decisive question is that, for plaintiff to be granted relief, it was necessary that plaintiff establish the necessary elements of actionable fraud. In defining such elements, this court has recently stated in the case of Gipp v. Lynch, 226 Iowa 1020, 1026, 285 N. W. 659, 662, as follows:

"This action is based primarily on the claim of fraudulent

conduct on the part of appellee. The elements necessary to constitute actionable fraud are stated by this court in the case of Reinertson v. Consolidated Chem. Prod. Co., 205 Iowa 417, 420, 216 N. W. 68, 69, as follows: 'The elements of a cause of action for fraud, though they may be stated in more condensed form (Smith v. Packard & Co., 152 Iowa 1, 5, 130 N. W. 1076), are: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, (7) resulting injury and damage. 26 Corpus Juris 1062.' "

After reviewing the facts in that case, we conclude 226 Iowa, at page 1030, 285 N. W., at page 664, as follows:

"The record herein appears to be one for the application of the rule recognized by this court in the case of Steckel v. Million, 210 Iowa 1139, 1141, 231 N. W. 387, 388, wherein we state: 'Because of the record here presented, we are constrained to affirm the judgment and decree entered in the district court. This conclusion is reached, not, however, on the theory suggested by the district court, that there was fraud without resulting prejudice, but rather, by applying the principle that there can be no actionable fraud in the absence of damage or prejudice. Without prejudice or damage to appellant, there was, in fact, no fraud, although Scott and the appellee may have intended to defraud.' "

From the above recent pronouncement of this court, it is obvious that, before plaintiff is entitled to relief, it is necessary for plaintiff to establish that the defendant bank was guilty of fraudulent conduct resulting in damage to the plaintiff. The amount of such damage, if any, is the extent of plaintiff's recovery. This is recognized by plaintiff. In the petition, plaintiff states, "That by reason of the facts herein alleged plaintiff has been defrauded, the exact amount of *damage* to plaintiff by reason thereof being to plaintiff unknown." In the reply argument, filed on behalf of plaintiff in this court, counsel state:

"In the instant case plaintiff alleged a conspiracy and

fraud which *resulted* in *damage* to plaintiff. That is the subject matter of the Court's decision. Manifestly, before the Court could determine whether the plaintiff was entitled to an accounting, it was necessary the court find out if fraud had been committed and whether it had resulted in probable damage to plaintiff. Those questions were determined by the Court. It is immaterial whether there was a technical conspiracy if there was in fact a fraud which was perpetrated by defendants acting jointly. The Court had to make a finding on that subject and upon the question of whether there was probable right of recovery. That finding the Court has made.''

To sustain such determination, it was necessary for the plaintiff to establish and for the court to find that the loss of $25,000 was occasioned by misconduct on the part of the defendant bank. After careful examination of the record, we are of the opinion that the record does not sustain such a finding.

The allegation of the existence of a conspiracy is important in undertaking to connect defendant bank with the loss to plaintiff, which occurred prior to September 22, 1936. It is the plaintiff's theory that Gaughen conspired with the defendant bank and that it was agreed between them that Gaughen would take for his own use $25,000 of plaintiff's property, and that the defendant would aid and abet Gaughen in concealing such misappropriation of plaintiff's assets.

The record shows that Gaughen first wrote Anderson on September 19th. Accordingly, to sustain plaintiff's theory, it is necessary to establish that the agreement was made prior to the time that the letter of September 19th was written. There is no direct evidence of any such agreement or conspiracy. With Gaughen unavailable as a witness, the absence of such direct evidence is not surprising. Plaintiff relies, as is often the case, upon circumstantial evidence. The circumstantial evidence introduced by the plaintiff herein not only fails to prove plaintiff's theory, but appears to be more consistent with defendant's theory than with plaintiff's.

Anderson, as a witness, denied any such conspiracy. As stated, there is no direct evidence of it. Plaintiff's Exhibit 23

is a debit slip, reading as follows: "Date—9/14, Account—City Natl, Description — Bonds, Amount — $25,000.00." Plaintiff's Exhibit 24 is a credit slip, reading as follows: "Date—9/14, Account — Bonds, Amount — $25,000.00" with no description. These two exhibits were prepared by Gaughen and form the basis for the entries on plaintiff's books, which appear on September 14, 1936, wherein the books show a debit of $25,000 to defendant bank, and a credit to plaintiff's bond account of $25,000. The record so made by Gaughen is subject to but one interpretation, namely, that, on September 14, 1936, he sent $25,000 worth of plaintiff's bonds to the defendant bank. Plaintiff's witness, Peterson, who succeeded Gaughen as cashier, testifies that, after a very diligent search, he found no record, and in fact no evidence of any bonds belonging to plaintiff having been sent to the defendant bank on September 14, 1936. Defendant's evidence is likewise conclusive that no bonds were received from plaintiff on September 14, 1936. The evidence clearly demonstrates that on September 14, 1936, Gaughen was short, as cashier for plaintiff, in the amount of $25,000, and undertook to conceal such shortage by making entries on plaintiff's books to indicate that $25,000 worth of plaintiff's bonds had been sent to the defendant bank, and that the defendant bank was indebted to the plaintiff in said sum on account thereof. Such entries are false and fraudulent, both as to plaintiff and defendant bank.

The transactions that were later had by Gaughen with defendant bank were obviously had for the purpose of further concealing his shortage. It was necessary that he employ some method to reconcile the debit of $25,000 on plaintiff's books with the books of the defendant bank. To accomplish this result, he wrote Anderson that he was in need of a temporary showing of credit to the extent of $25,000. To accomplish this, he sent his note for $25,000, 70 shares of bank stock in plaintiff, owned by himself and his immediate family, and a draft on the account, signed by himself, as cashier for plaintiff. When this sight draft was sent, it was not sent for the purpose of drawing against funds of plaintiff already in the hands of

defendant bank. The note was sent as a basis for a credit in the account of plaintiff with defendant against which defendant could later charge the sight draft when the temporary need for a credit showing had terminated. Accordingly, in the making of this transaction, plaintiff bank gave nothing and defendant bank received nothing. The matter was solely a bookkeeping arrangement, and the stock was sent as additional security that Gaughen would not permit it to be used as anything except a bookkeeping arrangement. Through this arrangement, plaintiff lost nothing, defendant gained nothing. Plaintiff's loss had already occurred. The transaction with defendant did not cause the damage. It merely afforded Gaughen an opportunity to conceal the fact that the damage had been sustained by plaintiff.

There is no direct evidence and the circumstantial evidence is wholly insufficient to show that any prior arrangement had been made by defendant bank with Gaughen whereby the defendant was to aid Gaughen in stealing $25,000 for his own purposes from the plaintiff. There is no rational theory on which it could be conceived that defendant bank would make such an arrangement. It had absolutely nothing to gain and everything to lose by entering into such an arrangement. Any officer of the defendant bank who would participate in such an arrangement would violate every duty that he owed to defendant. The evidence is far more consistent with the theory that defendant was deceived by Gaughen's actions than that it knowingly cooperated with him.

The subsequent conduct of defendant bank is likewise consistent with defendant's theory and inconsistent with plaintiff's theory. When the draft was credited to plaintiff's account and the note returned as paid on October 16, 1936, this was entirely consistent with defendant's contention that it was a temporary matter and that defendant bank relied upon Gaughen's representation that the deal that he contemplated had not materialized. It is not consistent with the fact that Gaughen had stolen $25,000 of plaintiff's property which he still had to keep concealed. On October 31, 1936, the monthly statement which de-

fendant bank sent to plaintiff showed the items which revealed the transaction and the balance showed that plaintiff's books could not be reconciled with defendant's books. For Gaughen to continue to conceal his shortage, it was necessary for him to conceal defendant's statement. Thus we find one alleged conspirator performing an act which his alleged coconspirator must conceal. This is not consistent with unity of action, plan or design.

The transactions which pertain to the second $25,000 note and second $25,000 draft are of the same character and subject to the same comments. They all occurred in the month of November and the statement sent at the end of the month had to be concealed by Gaughen from the plaintiff.

█ Counsel for plaintiff in their brief and argument, while making various contentions, in fact recognize the vital weakness of their position. In their opening brief and argument, they state: "On the trial a full accounting was made of all items of account between the two banks, except the one item of $25,000 and plaintiff's attorney so admitted of record, and it was stipulated." There were two items of $25,000. Defendant bank accounted for each in exactly the same manner. If the accounting as to the one was proper, it was also proper as to the other. If the accounting was improper as to one, it was improper as to both and plaintiff's claim would be for $50,000 rather than $25,000. The reason that counsel concede that a proper accounting was made as to all items except the one item of $25,000 is that there is no basis upon which plaintiff can claim a loss except that based upon Gaughen's hypothecation of $25,000 from the plaintiff's bond account on September 14, 1936.

█ From this it follows that, unless plaintiff has introduced sufficient evidence to justify a finding that defendant bank was guilty of conduct which resulted in plaintiff's loss of $25,000 from its bond account, plaintiff has established no basis upon which to permit a recovery herein. The trial court found that plaintiff had made a satisfactory showing on this issue. In this the trial court erred. The court should have found and de-

termined that the plaintiff had failed to establish that the defendant bank was responsible for the damage sustained by the plaintiff. From such finding, it necessarily follows that plaintiff has failed to establish any actionable fraud as against defendant bank. From this, it follows that plaintiff has failed to establish any basis for a constructive trust against the assets of defendant bank in the sum of $25,000 and there is no basis for requiring defendant bank to account for same. The court should have dismissed the petition as to defendant bank and Anderson.

II. The trial court's order contains a finding that on September 22, 1936, Gaughen borrowed $25,000 from defendant bank on his own personal note and used the same to pay off his own defalcation and debt to plaintiff, arising by virtue of the fact that the account was then short $25,000, further that on October 16, 1936, defendant bank took $25,000 from plaintiff's account through an illegal and unauthorized draft, still holds $25,000 belonging to plaintiff and that the matters pleaded in division III of the answer of defendant bank do not constitute a defense. These findings are erroneous.

There was a shortage of $25,000 on plaintiff's books. This was not true as to defendant's books. The shortage on plaintiff's books was due to false entries made by Gaughen in the bond account, not in plaintiff's account with defendant. In division III of the answer of defendant bank, it is asserted that Gaughen, while acting as cashier for plaintiff, made false and fraudulent representations to defendant. That his representations were false must be conceded. That they were relied upon as though true is established by the evidence. It is also asserted that plaintiff cannot ratify that part of the transaction that is beneficial and repudiate the burdens cast on plaintiff, that plaintiff must ratify the entire transaction. To deny the plea of estoppel and permit the transaction of September 22, 1936, to constitute a payment of Gaughen's defalcations as cashier for plaintiff, would work a fraud by plaintiff through Gaughen, as its cashier, against defendant bank. On this issue, the court should have found that the matters stated in divisions III and IV of the answer of defendant bank constituted a good defense.

It is plaintiff's theory that the conduct of Gaughen with defendant bank in regard to the $25,000 note-draft transactions was wholly unauthorized and not binding upon plaintiff. However, the effect of the court's decision, construing the transactions of September 22, 1936, as a payment of Gaughen's defalcations to plaintiff without the right of defendant bank to use the draft, without which it would not have accepted the deposit, in effect permits the plaintiff to ratify a part of the transaction, accept all elements of the transaction beneficial to it, and at the same time repudiate all the burdens of the transactions. This is contrary to well established principles repeatedly announced by this court.

In the case of Security Sav. Bank v. Hambright, 195 Iowa 1147, 1150, 193 N. W. 576, 577, we state:

"Let it be admitted, as an abstract proposition of law, that Davis was not the bank, and that, without the authority or approval, express or implied, of the board of directors, he could not bind the bank to a recognition of the agreement negotiated by him with the defendant; yet a bank, no less than a private individual, is subject to the rule which is as sound in law as in morals, by which the principal who ratifies or accepts the benefit of an unauthorized act of its agent takes it burdened with the conditions and qualifications which would attend it in the hands of the agent himself; or, to state it in plainer terms, the principal cannot ratify so much of the unauthorized act of the agent as it thinks to its advantage and repudiate the remainder. See Eaide, G. & Co. v. Ashbaugh, 44 Iowa 519; St. Louis Ref. & W. G. Co. v. Vinton Wash. Mach. Co., 79 Iowa 239 [44 N. W. 370, 18 Am. St. Rep. 366]; Moyers v. Fogarty, 140 Iowa 701 [119 N. W. 159]; Chamberlain v. Brown, 141 Iowa 540, 553 [120 N. W. 334]; Zelenka v. Port Huron Mach. Co., 144 Iowa 592, 599 [123 N. W. 332]; First Nat. Bank v. Athey, 188 Iowa 330, 336 [174 N. W. 347]."

Pursuant to the above pronouncement which, as indicated, is in accord with repeated pronouncements of this court, plaintiff could not claim the benefit of the unauthorized deposits

without also being subject to the burdens attendant thereto, which were likewise unauthorized. To ratify a part of the transaction is to ratify all of it.

The approach taken by the trial court was not from the standpoint of ratification, but rather from that of repudiation. But the rule works the same both ways. As above pointed out, where the act of an agent is unauthorized, if the principal undertakes to ratify any part of the transaction, he must ratify the entire transaction. The corollary of the rule is likewise true. If the principal undertakes to repudiate any part of the transaction as unauthorized, he must repudiate the entire transaction. He cannot claim the benefits of the transaction and undertake to repudiate the burdens. An illustrative holding on this proposition is the case of First Nat. Bank v. Athey, 188 Iowa 330, 336, 174 N. W. 347, 349, wherein we state:

"It is a rule of law long ago settled in this state that a principal may not repudiate the act of his agent as being in excess of authority, while he retains the fruit of the unauthorized act. In such case, authority will be presumed, as a matter of law. Eadie, G. & Co. v. Ashbaugh, 44 Iowa 519; Farrar v. Peterson, 52 Iowa 420 [3 N. W. 457]; Hartley St. Bank v. McCorkell, 91 Iowa 660 [60 N. W. 197]; Cassady v. Manchester F. Ins. Co., 109 Iowa 539 [80 N. W. 521]; Fleishman & Co. v. Ver Does, 111 Iowa 322 [82 N. W. 757]; Moyers v. Fogarty, 140 Iowa 701 [119 N. W. 159]."

Under the record herein, each $25,000 deposit was credited to the plaintiff bank as a part of a transaction wherein the defendant bank, in each case, acquired a draft on plaintiff's account for the amount of the deposit. Plaintiff now seeks to repudiate the drafts as unauthorized. The issuance of the draft in each case was a part of the same transaction which resulted in a deposit to the credit of the plaintiff. If plaintiff is to repudiate any part of the transaction, it must repudiate the entire transaction. To repudiate the draft in either case as unauthorized, requires also repudiation of the deposit to the credit of plaintiff. Accordingly, whether we approach the situation

from the standpoint of ratification or repudiation of Gaughen's unauthorized acts, the result is the same.

We have heretofore pointed out that, at the trial, counsel for plaintiff conceded and stipulated that defendant bank fully accounted for one of the $25,000 note-draft transactions. As there stated, the accounting as to each was identical. If defendant bank accounted for one, it accounted for both. The court should have held that it accounted for both because, if plaintiff was to ratify or repudiate either transaction, plaintiff was bound to ratify or repudiate the entire transaction. With each transaction ratified in its entirety, the record shows that the deposit in each case was made solely to create a debit item in plaintiff's account against which to credit the draft. This was done in each case. Each transaction has been completed. Defendant bank has fully accounted in each instance.

Numerous other legal propositions have been argued by counsel. They present interesting questions. They have been carefully considered but, in view of our determination as above stated, it is unnecessary for us to discuss or decide them. The principles announced in the cases relied upon by counsel for plaintiff would be significant and some of them would be applicable herein had plaintiff established that it was damaged by wrongful conduct on the part of defendant bank. However, in the absence of the necessary showing that defendant bank was guilty of conduct which caused damage to plaintiff, the authorities have no application.

The order appealed from is reversed and the cause remanded for further proceedings in harmony with this opinion. —Reversed and remanded.

HAMILTON, C. J., and STIGER, SAGER, HALE, OLIVER, and BLISS, JJ., concur.