C. A. BENTON, Appellee, v. GILES W. BROWN, Appellant.

**Sale of real property:** ACTION FOR COMMISSION: EVIDENCE. Where
1 defendant in an action for commissions for the sale of land contended in defense that he had revoked the agency prior to the sale, and it appeared that defendant had written a letter revoking plaintiff's authority, and there was also evidence to the effect that the letter was a subterfuge, plaintiff's evidence that he continued his efforts to sell the property after receipt of the letter was competent. It was also competent for plaintiff to show by the buyer that after he had decided to buy the property he went to defendant for the purpose of closing the deal.

**Same:** SUBMISSION OF ISSUES: EVIDENCE. Where plaintiff in this
2 action for commission for the sale of land contended that defendant's revocation of his authority was a mere subterfuge, and also that the same was not in good faith but for the purpose of defeating his commission, instructions presenting both theories were not erroneous on the ground that they were conflicting; but, under the record in this case there is no sufficient evidence that the revocation was in bad faith and for the purpose of defeating plaintiff's claim for commission, and a submission of that issue was therefore erroneous.

*Appeal from Woodbury District Court.*—HON. DAVID
MOULD, Judge.

WEDNESDAY, FEBRUARY 9, 1910.

ACTION aided by attachment to recover a commission for the sale of real estate. The defendant denied that plaintiff procured a purchaser for his land, and pleaded that he sold the land himself. He also pleaded a counterclaim for damages growing out of the attachment, based upon the ground that he was not indebted to the plaintiff in any sum whatever, and that the attachment was wrongfully sued out. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Gardiner & Nelson,* for appellant.

*M. L. Sears,* for appellee.

DEEMER, C. J.—Plaintiff claims that defendant listed his property with him for sale at a certain price; that he, plaintiff, found a customer whom he introduced to defendant, and with whom he, defendant, was negotiating, when he, defendant, on or about July 19, 1906, gave plaintiff notice that he had taken his property off the market. Thereafter defendant sold the property to the person whom plaintiff had introduced. He claims, however, that all previous negotiations were broken off and the proposed sale abandoned before the deal was finally consummated. Plaintiff, in reply, denied the affirmative allegations of the answer, and in his testimony, while admitting the receipt of certain letters withdrawing the property from the market, claims that these letters did not mean what they said for the reason that there was an understanding and agreement that these letters should be sent for the purpose of "squaring defendant with his relatives," and that he, plaintiff, was to continue as agent the same as he had theretofore done. As much of the testimony with reference to the revocation of the agency was in writing, we here copy such of the letters as are deemed material.

Minneapolis, Minn., Dec. 7, 1905. Mr. C. A. Benton, Sioux City, Iowa—Dear Sir: Replying to yours of the 6, will say that I will give you the exclusive sale for 90 days on the following described property at the following named prices: [The description of two other pieces follows.] The west 50 feet of lots 1 and 2, block 2, Floyd City addition, price $3,000. You to receive regular commissions for any sales made. Yours truly, Giles W. Brown.

Sioux City, Iowa, Dec. 9, 1905. Mr. Giles W. Brown, Minneapolis, Minn.—Dear Sir: Yours of the 7th inst. at hand. In regard to the west 50 feet of lots 1 and 2, block 2, Floyd City addition, in my opinion $3,000 is more than the property will sell for at the present time. I took a party to look at this property the day before yesterday, before your letter was received and he finally authorized me to make you an offer of $1,500, saying that he could buy a full lot at the corner of Grand & Morgan Streets for $1,250. Upon investigating in another quarter I found that the lot to which he called my attention is actually on the market at the price stated, but I told him I did not think best to submit his proposition to you until I had an answer to my letter. Now my idea is that this party might give as much as $1,800 or $2,000, but I have no idea that he would be willing to pay $3,000 or any ways near that sum. However, as stated in my last letter it is for you to place values upon your own property, and if I can not obtain that price, submit any offer that I can secure. As promised in my last letter I will make an extra effort to dispose of your property, and shall keep you posted as matters progress. Yours truly, C. A. Benton.

Spokane, Wash., April 16, 1906. Chas. A. Benton, Sioux City, Iowa—Dear Sir: I hereby notify you that I withdraw my Sioux City property from the market. If I am not mistaken, the 9th of Feby. I gave you a price on Sioux City property, good until otherwise advised by me. Yours truly, Giles W. Brown.

June 13, 1906. Mr. Giles W. Brown, City—Dear Sir: Since you left I have had an inquiry concerning the Wise house and lot on Nebraska Street. I named a price of $12,500 but have heard nothing since, and do not know whether anything will come of it or not. In conversation

while here you mentioned the matter of the Cereal Company dismantling their property on Grand Street, and promised to let me know if such action should be taken and the price of the lots. It has occurred to me that it might be a good idea to handle your lot just across the street from it in connection with this property, and thereby secure a better price for your lot than otherwise could be obtained. If this idea strikes you favorably I wish you would name me a price on the mill property giving me exclusive sale, for sixty days and I will see if I can get such an offer on the whole layout that will enable me to put your own lot in at your full price. I hope you are progressing favorably with your elevator deal and will soon have this matter in your control. Awaiting your reply, I am, Yours truly, [Signed] C. A. Benton.

Chicago, June 15, 1906. Mr. Chas. A. Benton, Sioux City, Ia.—Dear Sir: I have yours of the 13th and should we decide to dismantle the plant, as stated in yours, will let you know. Do not mention this to any one, for if the reporters get hold of it they would likely make a big story out of it. Yours very truly, [Signed] Giles W. Brown.

June 30, 1906. Mr. Giles W. Brown, Minneapolis, Minn.—Dear Sir: I took up the matter of the sale of your lot on Grand St. near the oat meal mill with Mr. Hutton as we talked on June 22, upon a basis of $3,000 and have had several interviews with him on the subject. He evinces some considerable interest but said last night he would take up the matter more fully after the 4th of July when I am to see him again. I am writing this letter in accordance with your suggestion to let you know how he received the proposition. I am working diligently on the sale of the No. 510 Nebraska St. property and hope to do something with it before July 10. Truly yours, C. A. Benton.

Minneapolis, Minn. July 10, 1906. Mr. C. A. Benton, Sioux City, Iowa—Dear Sir: I have yours of the 9th inst. inclosing contract for sale of property of 510 Nebr. St., also rec'd Chicago exchange for $510. You will remember I gave you a net price of $10,000 until July 10th. I stated to you I was thinking of purchasing a line of elevators and could use the money at good advantage. I thought I made it clear to you I wanted cash. I return

to you herewith contract, also Chicago exchange. Kindly send me copy of memoranda I gave you. Yours truly, Giles W. Brown.

City, July 19, '06. Mr. C. A. Benton, City—Dear Sir: So there will be no chance for a misunderstanding I hereby notify you to take the Floyd City property off the market. I am quite certain I advised you once but no harm in doing so again. Yours truly, Giles W. Brown.

August 3rd, 1906. Mr. Giles W. Brown, Minneapolis, Minn.—Dear Sir: I reached home from my trip about a week ago and found the Nebraska Street deal closed satisfactory to parties most interested which of course was gratifying to me, as I am always pleased to find that I have given satisfaction to both sides in any transaction. I found your note on my desk concerning your property in Floyd City, but you are in error in thinking that you had given me previous notice about this property being off the market. The last time we had any conversation on this subject was June 22nd the day you gave me the $10,-000 price on the 510 Nebraska Street, and at this time you authorized me to offer your lot in Floyd City to Mr. Hutton, and requested me to let you know what he said about the proposition, which request I complied with in my letter of June 30. Mr. Gilmore of the Hawkeye Land Co. informed me after my return that you had called to see him about this lot as I had suggested to you, and so you could not have had it in mind to withdraw this property at that time. I have done some considerable work on this lot, and as I have always been fair with you, and represented things just as they were, I think you should give me a chance to see what I can do, and if your notice was merely in order that you might have something positive to say to your relatives whom you told me desired to represent you here—well I think you can trust me to handle that matter discreetly, in such a way as not to compromise you in the least. Please let me hear from you promptly and if you have a bottom cash price and want to realize on this lot I am in a position I think to do you more good than any one else. The two parties above referred to I count my customers, but of course, I will not confine myself to them in my effort to effect a sale of this lot. Kindly let me hear from you at your early convenience, and oblige. Yours truly, C. A. Benton.

Minneapolis, Minn., Aug. 4, 1906.  Mr. Chas. A. Benton, Sioux City, Iowa—Dear Sir:  I have yours of the 3rd inst. and contents carefully noted.  In regard to my Floyd City property or any other property I have in Sioux City which I have placed in your hands I hereby notify you that I wish to take same off the market, so consider all prices I have given you on my property cancelled. Yours truly, Giles W. Brown.

November 27, 1906.  Mr. Giles W. Brown, Minneapolis, Minn.—Dear Sir:  At what price will you authorize me to make a sale of your lot in Floyd City, at the corner of Lafayette & Grant Sts.?  Yours truly, C. A. Benton.

Minneapolis, Minn., Nov. 30, 1906.  Mr. C. A. Benton, Sioux City, Iowa—Dear Sir:  In reply to yours of the 27th inst.  In regard to my Floyd City lots, will state that they are not for sale at the present time.  Should I want you to sell those for me at any time in the future, I will let you know.  Yours truly, Giles W. Brown.

The property was sold to one Gilmore in August, 1907, for the sum of $3,000; the final negotiations being with defendant Brown.  On the issues joined and the testimony adduced the trial court gave the following, among other, instructions:

Par. 6.  You are instructed that where property is listed with a broker for sale, and the broker procures a customer for the purchase of said property, to whom the owner sells the property during the existence of the agency at the terms upon which it is listed with the broker, he is entitled to his compensation, and in this case it is admitted by the pleadings that the property was listed with the plaintiff for sale at the sum of $3,000, and the uncontroverted evidence shows that the plaintiff called the attention of the Sioux City Stockyards Company through its agent, J. D. Gilmore, to said property, and subsequently the defendant sold the property to the Sioux City Stockyards Company at the price at which it was listed with the plaintiff.  But defendant claims that prior to the sale of said property by him to the Sioux City Stockyards Company, the authority of the plaintiff to sell the property

was revoked and canceled, and that he negotiated the sale without aid of the plaintiff. Evidence has been introduced of the revocation of the authority to sell. But the plaintiff claims that said revocation was not intended by the defendant as a revocation of the authority, but as a subterfuge to conceal from other parties the existing of the agency, and that there at all times existed an agreement between the plaintiff and the defendant that the plaintiff should be the agent for the sale of said property. You are instructed that the burden of proof is upon the plaintiff to prove such an agreement, and that the revocation of the authority was not intended by the defendant to be a revocation, but was a subterfuge to conceal the agency of the plaintiff from other parties. And, if plaintiff has so proven to you by a preponderance of the evidence, then your verdict should be for the plaintiff.

Par. 7. Plaintiff further claims that the revocation was not in good faith, and was made for the purpose of defeating or preventing plaintiff from procuring his commission for the sale of said property. On this branch of the case you are instructed that the owner of real estate who has placed the same in the hands of a broker for sale has the right at any time prior to the procuring of a purchaser for the property by the broker to revoke and cancel the authority of the broker to sell the same, if he acts in good faith, without any intention on his part to defeat pending negotiations between the broker and the proposed customer, and thereby defeating the broker in earning a commission upon the sale. But, if the broker having authority from the owner to sell real estate has pending negotiations with a prospective purchaser, with prospects of success, and the owner subsequently carries on the negotiations started by the broker, and sells said real estate to the customer furnished by the broker upon the terms upon which it is given to the broker to sell the same, the owner can not by so doing defeat the broker's commission earned in procuring the customer.

Par. 8. So in this case if you find from the evidence that the plaintiff procured a purchaser for this property, and through the efforts of the plaintiff the purchaser was induced to purchase the property, and you find that while negotiations were pending between the proposed purchaser

and the broker the defendant, for the purpose of defeating plaintiff's right to a commission, canceled his authority, and made the sale himself to the purchaser, then your verdict should be for the plaintiff.  But if you find from the evidence that the negotiations between the plaintiff and the proposed purchaser had failed, and that after the failure of said negotiations the defendant revoked the authority of the plaintiff to sell said property, and said revocation was in good faith, without any intent on the part of the defendant to defeat the plaintiff in a commission, then your verdict should be for defendant, even though after the revocation the defendant sold the property to the proposed purchaser.

I.   Before taking up these instructions, it is well to notice two rulings on the admission of testimony which are complained of.   Plaintiff was permitted to testify, over defendant's objections, that, after the receipt of the purported letters of revocation, he, plaintiff, continued his efforts to sell until the sale was finally consummated.   In view of the testimony as to the purpose of these letters, there was no error here.   Again, the buyer of the property was permitted to testify, over defendant's objections, that, when he decided to make the deal, he went to plaintiff for the purpose of closing it.   This testimony was admissible for the purpose of showing that plaintiff's efforts were the procuring cause of the sale.

1. SALE OF REAL PROPERTY: action for commission: evidence.

II.   Returning now to the instructions, it will be observed that two theories of plaintiff's case were thereby presented to the jury.   One was that, while the letters of revocation were written by defendant and duly received by plaintiff, they were not intended to be a revocation of authority, but a mere subterfuge to conceal from other parties the existence of the agency; and the other was that the letters were not written in good faith, but were for the purpose of defeating or preventing plaintiff from procuring his commission.

2. SAME: submission of issues: evidence.

The instructions are not conflicting as defendant's counsel argue. The jury might properly have found against plaintiff upon one theory and for him on the other, and still have returned the verdict it did. This is so clear that argument can add nothing.

But it is strenuously argued that there is no evidence to sustain the claim that the revocation was in bad faith. In order to support the instructions as being inconsistent, the two theories must be differentiated; and, when this is done, plaintiff, in order to recover, must rely solely and alone upon the proposition that the letters of revocation were not written pursuant to an agreement or understanding between the parties, but in bad faith for the purpose of defeating plaintiff, and defrauding him out of his claim for a commission. Appellant's counsel strenuously claim that there is no testimony to justify any such instruction, and a perusal of the record seems to justify that conclusion. Moreover, plaintiff admitted that neither he nor defendant was able to sell the property during the year 1906, and on November 27th plaintiff wrote defendant the letter asking defendant for a price at which he, defendant, would authorize him, plaintiff, to make sale of the lot. This was at the request, it seems, of another proposed purchaser. In response to this, defendant said the lot was not for sale. The sale to Gilmore was not made until August 9, 1907, and Gilmore informed plaintiff that he suddenly concluded to buy the property for track purposes for the Sioux City Stockyards Company. Gilmore went to Minneapolis, Minn., and there purchased the property from the defendant directly, although he tried to find plaintiff before concluding his negotiations, but was unable to do so. Gilmore testified that he did not conclude to buy the property at the price asked until just before he went to Minnesota, when the company which he represented suddenly concluded that it wanted the property, even if it had to pay the price. In the absence of testimony tending to show

that the letters written by defendant to plaintiff revoking the agency, the first of which bears date April 16, 1906, were intended as a blind, and the other testimony to the effect that plaintiff was to continue his efforts to sell, there is no evidence of any bad faith on the defendant's part. These revocations were written long before the sale was consummated, and the dealings with Gilmore had been entirely barren of results. There was no testimony to sustain the issue of bad faith in the revocation independent of the testimony regarding the purpose for which they were written, and the trial court was in error in submitting that issue as a separate defense.

The instructions state the law correctly; but, as one branch thereof had no support in the testimony, there was error in submitting the question to the jury.

For the error pointed out the judgment must be, and it is, *reversed*.