OLMSTED, INC., Appellee, v. MARYLAND CASUALTY COMPANY et al., Appellants.

No. 41829.

APRIL 3, 1934.

REHEARING DENIED NOVEMBER 22, 1934.

Miller, Miller & Miller, for appellants.

Bradshaw, Schenk & Fowler, for appellee.

CLAUSSEN, C. J.—This action is based upon a conspiracy. The appeal can be disposed of by an examination of the facts for the purpose of ascertaining whether anything was done pursuant to the

·alleged conspiracy which is actionable. This court is committed to the rule that a conspiracy cannot be the subject of a civil action unless something is done pursuant to it which, without the conspiracy, would give a right of action. Beechley v. Mulville, 102 Iowa 602, 70 N. W. 107, 71 N. W. 428, 63 Am. St. Rep. 479; De Wulf v. Dix, 110 Iowa 553, 81 N. W. 779; Jayne v. Drorbaugh, 63 Iowa 711, 17 N. W. 433; Dunshee v. Standard Oil Co., 152 Iowa 618, 132 N. W. 371, 36 L. R. A. (N. S.) 263.

The Maryland Casualty Company is an insurance company authorized to do business in the state of Iowa. On July 1, 1925, it entered into a contract with Olmsted & Olmsted, Inc., by which the latter became its general agent in approximately thirty-five counties in the state of Iowa. On October 14, 1925, this contract was assigned by Olmsted & Olmsted, Inc., to Olmsted Incorporated, plaintiff herein. The contract provided that it could be terminated by either party upon thirty days' notice in writing to the other. Subsequent to the date of the contract between the casualty company and Olmsted & Olmsted, Inc., the Olmsted Company greatly enlarged the number of local agents affiliated with it. This expansion was accomplished only as a result of considerable effort and expense. The insurance business of Olmsted & Olmsted, Inc., and its assignee Olmsted, Incorporated, was not confined to the business of the casualty company. On September 23, 1929, a notice was prepared by the casualty company of the termination of the contract as of the date of October 31, 1929, and this notice was given to Olmsted, Incorporated, as required by the contract. Upon the termination of the contract, the casualty company opened a branch agency in Des Moines in charge of the defendant Buckton as its agency manager. Upon the termination of the contract between the casualty company and Olmsted, Incorporated, the casualty company entered into subagency contracts with local insurance agents in many cities and towns under which such local agents were authorized to represent the casualty company in securing and writing insurance. In the course of building up its subagency force, a large number of contracts were entered into with local agents who had been and were under contract with Olmsted, Incorporated.

With this brief statement of facts it may perhaps be well to briefly state the claims of Olmsted, Incorporated, presented by the pleadings. Olmsted, Incorporated, alleged that the casualty company and Buckton entered into a conspiracy to secretly organize and

open a branch office of the casualty company in the city of Des Moines; to surreptitiously ingratiate themselves with the subagents of Olmsted, Incorporated; to covertly alienate such subagents from Olmsted, Incorporated; and to then cancel the contract between the casualty company and Olmsted, Incorporated. It is pleaded that the casualty company had orally agreed with plaintiff, prior to July, 1929, to place a special agent in the territory of Olmsted, Incorporated, for the purpose of developing said territory for the mutual benefit of the company and the general agent; that, subsequent to the formation of the conspiracy and under the guise that he was the special agent, above referred to, Buckton was sent to the general agent; and that, in the belief that Buckton was such special agent, plaintiff disclosed to Buckton its secret and confidential agency lists and files, arranged convenient routes by which Buckton might visit the subagents and wrote letters to its subagents advising them that Buckton would call upon them shortly for the purpose of assisting them and plaintiff, as well as the defendant casualty company; that on the 1st day of November, 1929, the casualty company opened a branch office in Des Moines with Buckton as branch manager; that before and after opening such office, by means of the confidential information so given and the favorable introduction of Buckton by plaintiff and by the use of blandishments and false and defamatory statements concerning plaintiff, Buckton alienated a large number of plaintiff's subagents and induced them to enter into contracts with the branch office of the casualty company. It was also claimed that premiums on renewals of insurance were diverted from plaintiff. These allegations were denied by the defendants.

The evidence indicates that Olmsted, Incorporated, was quite energetic in the extension of its agency force, that during the years it represented the casualty company it very materially increased the volume of business which the casualty company drew from the territory of such general agency, and that the increase in volume of business compared very favorably with the volume of increase of any other general agent of the casualty company. The officers in charge of the production department of the casualty company wrote flattering and commendatory letters to the general agent. There were some matters which occasioned friction and dissatisfaction between the company and the general agent. These were occasioned by the overlapping of subagencies of Olmsted, Incorporated, in ter-

ritory within the state of Iowa assigned to other general agents of the casualty company, the representation by Olmsted, Incorporated, of other companies writing lines of insurance that were written by the casualty company, the execution of policies by the general agent in excess of its authority, and disputes in relation to the accounts of the general agent with the casualty company. With the merits of these matters we are not concerned, for the agency contract was not canceled on account of any claim that its terms and conditions had been breached. It fairly appears from the record that officers of the casualty company promised to send a special agent into the territory of the general agent for the purpose of aiding in the development of the business. There is, however, no provision in the contract between the parties for the services of such special agent. In the latter part of July, 1929, Buckton, who had been recently employed by the casualty company, was sent to Des Moines. He went as a special agent of the casualty company. It will be understood of course, that the term "special agent" has no defined significance. He was instructed to make a survey of the general agency situation in Des Moines and to await the arrival in Des Moines of a Mr. Irelan, who was supervisor of agents and assistant secretary of the company. While awaiting the arrival of Mr. Irelan, Buckton made a survey of the general agency situation in Des Moines, which the record indicates consisted of interviewing the general agents of other insurance companies and ascertaining, so far as possible, the volume of business transacted by them. In some instances Buckton inquired of other general agents whether they would be interested in representing another company. Buckton arrived in Des Moines a few days ahead of Irelan. The first day after Irelan's arrival was spent by Irelan and Buckton in going over the results of Buckton's survey of the general agency situation in Des Moines. On the second day Irelan and Buckton went to the offices of Olmsted, Incorporated, where Mr. Buckton was introduced by Mr. Irelan. Nothing was said about the fact that Buckton had been in the city for several days, and plaintiff's officers undoubtedly inferred that Irelan and Buckton had just arrived in the city. The witnesses do not agree as to what transpired in the offices of Olmsted, Incorporated, but the version of plaintiff's witnesses is that Buckton was introduced as the special agent that the casualty company had agreed to put in the territory; that plaintiff had a complete list of its subagents showing the name, address, volume of production and other information concerning

such subagents; that this was a confidential list kept by one of plaintiff's executives; that this confidential list was handed to Buckton, who made use of it for several days and who took from it such information as he desired; that plaintiff's officers wrote letters to its subagents advising them that Mr. Buckton would call upon them for the purpose of developing business; and that plaintiff's officers assisted Buckton in arranging convenient routes for visiting the subagents. These things were not asked for by Irelan or Buckton. They appear to have been voluntarily and willingly furnished by plaintiff's officers. In the last analysis, plaintiff's case is bottomed on the theory that the failure of Irelan and Buckton to tell plaintiff's officers of the fact that a survey of the general agency situation had been made, and a survey of the state situation was contemplated, coupled with their acceptance and use of the agency list, etc., are indications of a sinister purpose, and, in connection with the ultimate cancellation of the subagency contract and the employment of subagents by the casualty company warrant the finding that a conspiracy existed as a result of which such things were done. It appears without dispute that Buckton did visit some subagents. Buckton was in Iowa until about the first of September, 1929; he then returned to the home office of the casualty company and made a complete report of his survey of the Iowa situation to his superior officers. Ultimately the casualty company determined upon the termination of the agency contract, and on September 23, 1929, notice of termination of the contract was prepared and was given in due time as required by the contract, terminating the contract as of October 31, 1929. It was determined that a branch agency should be opened by the casualty company in Des Moines, and, as has been noted, such branch agency was opened under the charge of Mr. Buckton on November 1, 1929.

Under the law, persons engaged in writing insurance must be authorized to do so by the commissioner of insurance. Such authorization is obtained by the company for which business is written. The casualty company had obtained such authorization for all subagents of Olmsted, Incorporated, who were writing business for the casualty company, and the files of the casualty company disclosed the names of such subagents. When the company's branch office was opened, letters were written by the company to such subagents notifying them of the termination of the general agency contract of Olmsted, Incorporated, and of the opening of the branch office of

the company, and such subagents were offered an opportunity to continue to write business for the casualty company, and a contract for that purpose appears to have been forwarded with the letters. It does not appear that any letters were written by the casualty company to any agents of plaintiff who were not licensed through the casualty company. Subsequently, representatives of the casualty company traveled throughout the state in search of local agents and procured many local agents. By these means many of the subagents of Olmsted, Incorporated, entered into subagency contracts with the casualty company, but none of such subagency contracts were exclusive in the sense that they required the termination of relations between such subagent and Olmsted, Incorporated, or interfered with a subagent representing such other insurance companies as he saw fit. We have very carefully examined the record, embracing over six hundred pages, to determine whether, either prior or subsequent to the cancellation of the agency contract between the casualty company and Olmsted, Incorporated, anything was said or written by Buckton or by any officer of the casualty company to any subagent of Olmsted, Incorporated, derogatory to Olmsted, Incorporated, or which could be construed as a covetous effort to alienate subagents from Olmsted, Incorporated. Many of the subagents were witnesses upon the trial of the case. The representatives of the casualty company who solicited and obtained subagency contracts testified to what was said and done. The record is devoid of mention of defamatory statements concerning Olmsted, Incorporated. The record is conclusive that such subagents were obtained only upon the statement that the contract between the casualty company and Olmsted, Incorporated, had been terminated and representations in relation to the character of the casualty company and the class of service rendered by it. Many of the agents had written business for the casualty company for many years prior to the contract by which Olmsted, Incorporated, became general agents. Many of such agents desired to retain their connections with the casualty company.

If it be conceded that a conspiracy existed between Buckton and the casualty company or its officers, plaintiff could not recover under the record, because the casualty company had a perfect right to cancel the agency contract, as well as to secure the services of subagents in the manner employed by it as disclosed by the record. See cases cited above.

A conspiracy is not established by the record. There is no direct evidence that such a conspiracy was formed. A conspiracy cannot be inferred from the record, because nothing was done by the alleged conspirators which was unlawful. The casualty company had the absolute right to end the contract. After the termination of the general agency contract, the casualty company had a perfect right to secure a subagency force by the means which it used.

It was undoubtedly the casualty company's right to survey the general agency situation in Des Moines and the situation in the territory in which Olmsted, Incorporated, was its general agent. It had a perfect right to do this without advising Olmsted, Incorporated, that the survey was in progress. In fact a survey of the situation would seem to be essential to the general development of the casualty company's business in the territory unless the special agent was intended to be no more than a roving soliciting agent. The record is largely silent concerning the character of the work which the special agent contemplated by Olmsted, Incorporated, was to perform. The record is likewise largely silent concerning what Buckton did in the territory. It is in evidence that he did not send in a single application for insurance, and it is also in evidence that the business of the territory was not increased during the period of time that he was in the field. No subagent testified that anything derogatory to plaintiff was said by Buckton. One agent testified that Buckton told him that he, Buckton, might soon have some good news for the agent, but that Buckton never told him what the news was. Another agent testified that Buckton told him the Olmsted contract had been canceled, but an examination of the whole record indicates conclusively that this conversation took place after the branch agency had been opened and the Olmsted contract had been terminated. In this situation there is no basis from which it can be found that Buckton was not performing the work of the special agent, notwithstanding the fact that at the same time he was making a general survey of the whole situation. It may be that as a matter of courtesy and fairness Olmsted, Incorporated, should have been informed that one of the things which Buckton was to do was to make a general survey of the situation in the territory. But this was not a matter of legal right. The officers of the casualty company had expressed their gratification for the increase in volume of business originating in the general agent's territory, but they had likewise expressed in no uncertain

terms their disapproval of conduct of the general agent inconsistent with the contract. The action of the officers of the casualty company which resulted in the assignment of Buckton to the Iowa territory and ultimately in the termination of the general agency contract appears in evidence. There is no circumstance in such conduct tending even remotely to establish the conspiracy charged. This, of course, would not conclusively establish that a conspiracy did not exist. Its existence might be inferred from other circumstances, but it cannot be inferred from the fact alone that at the time Mr. Buckton came to Iowa it was not disclosed to Olmsted, Incorporated, that a survey of its territory was contemplated and would be made by Mr. Buckton. Neither can it be inferred from the fact that the agency contract was subsequently terminated, and thereupon the casualty company built up its own subagency force. The casualty company had a right to do these things, and plaintiff could not cut off such rights by voluntarily furnishing its list of agents to Buckton or by extending courtesies to him. When Buckton was sent to Iowa, Irelan gave him a letter to an acquaintance of his in Des Moines, one M. L. Dudley, who had been general agent in Des Moines for a number of insurance companies, in which Irelan stated that Buckton's first assignment was to make a complete survey of the city of Des Moines. Dudley testified that, when Buckton presented the letter from Irelan, he stated that he had come to build up a new agency and expected to make some changes, and that they were going to open an agency in Des Moines. Buckton as a witness denied having made such statements, but that is of no particular significance. Dudley immediately wrote to Irelan applying for a position as manager of a branch office for Iowa. Soon afterwards Dudley gave plaintiff's officers a copy of Irelan's letter, and the matter was then discussed by plaintiff's officers with Buckton, who stated that it was true that he was sending in reports to the home office; that he was in Iowa to help plaintiff build up its business; that the reports sent in were favorable to plaintiff; and that he felt that plaintiff was the best representative the casualty company could have and that the general agency plan was the best plan for the casualty company to follow. It is not shown by the record that any of such statements made by Buckton were not true. In this discussion Buckton denied having talked of a branch office with Dudley, and the record presents the situation in which Dudley affirms and Buckton denies that the matter was discussed.

The casualty company is a large corporation. Buckton did not control its policies. While Irelan was an officer of the company and supervisor of agents, he did not control the matter of canceling the agency contract of Olmsted, Incorporated. Such matters were determined by other officers of the casualty company. Such officers determined upon the cancellation of the Olmsted contract in September of the year 1929. The record does not indicate what factors were decisive of that issue with such officers. It would be purely a matter of speculation to suggest that the conclusion was based on the things that were a source of friction between the company and the general agent, but it would be equally a matter of speculation to say that a conspiracy existed between Buckton and the company or any of its officers as a result of which the matter was thus concluded. The testimony was wholly insufficient to warrant the submission of the existence of the conspiracy to the jury.

The allegations of the petition in relation to the defamation of plaintiff find no support whatever in the record, and the same is true of the claim that plaintiff's agency force was pirated by the casualty company and renewal premiums wrongfully collected by it.

At the close of plaintiff's case and again at the close of all the evidence, motions for a directed verdict were made by the defendants. The motions were overruled. They should have been sustained.

Many other errors are assigned that are in effect disposed of by the foregoing discussion. The judgment of the trial court is reversed.—Reversed.

STEVENS, KINDIG, ANDERSON, KINTZINGER and DONEGAN, JJ., concur.