JOHN P. SMITH et al., Appellants, v. DORA MILLER et al., Appellees.

No. 44309.

JUNE 21, 1938.

REHEARING DENIED SEPTEMBER 23, 1938.

Willett & Willett, for appellants.

Boardman & Cartwright, for appellees.

HAMILTON, J.—The circumstances surrounding the execution of the contract briefly stated are these: Plaintiff John P. Smith was a man 78 years old, a widower, and Margaret Livingston, a widow woman of 52 years of age, was his housekeeper. She had formerly lived in Chicago where she owned a small bungalow property. She came to Iowa in the year 1933 to nurse her brother's wife. Smith's deceased wife was a sister to Mrs. Livingston's brother's wife. After the death of Mr. Smith's wife, Mrs. Livingston went to Montour to keep house for Mr. Smith. They decided to look for a rooming house in Marshalltown and jointly purchase the same and live in a portion of it and rent the remaining rooms. Accordingly, in the month of August, 1936, they went to Marshalltown and called upon a Mr. Adkison, a real estate broker. At that time, he had listed what was known as the Monte Miller property on South Third Ave. in Marshalltown. The plaintiffs, with the land agent, went to call at the Miller place, a large rooming house. They saw Mr.

Miller out on the lawn. During the conversation, Miller was asked by the plaintiffs how the house was heated and he replied that it was "furnace heated throughout". Miller showed them through the house and down into the basement where there was a large furnace. As they were looking through the upstairs, Mr. Miller opened the door to one of the rooms and Mrs. Livingston spied a small heater in the room and said to Miller: "I thought you said the house was furnace heated throughout," and he said: "It is, but this old couple has two rooms and they thought last winter that it was awfully cold." This is testified to by both the plaintiffs and the land agent and is nowhere denied. Neither of the defendants was placed on the witness stand. The only evidence offered on behalf of the appellees was the introduction of the record of the deed transferring the property from Mr. Miller to Mrs. Miller in 1927. After the land agent and Mr. Miller were through talking and showing the property, Adkison had a talk with Dora Miller to ascertain if she was willing to sell and to arrange about the commission which was finally agreed upon, and the next day, August 11th, the contract was drawn and signed in the land agent's office by both plaintiffs and defendants and a $300 down payment was made and receipted for. In a very few days thereafter a prospective tenant of the plaintiffs examined the property and she ascertained that four of the upstairs rooms were not furnace heated, there being no registers or connections from the furnace with these rooms, and she communicated this fact to plaintiffs. They went immediately to the land agent and called his attention to the fact and the agent frankly admitted that the property was represented to be furnace heated throughout, and that relying on Miller's statement, he, Adkison, so represented it to them. Adkison took the plaintiffs immediately to see Miller concerning the matter. At this meeting, the following colloquy took place, as testified to by both the plaintiffs: Mrs. Livingston said to Miller: "How come you sold us this house when it was not furnace heated upstairs?" and he said: "I got stung." To which Mrs. Livingston said: "Oh, that is why you wanted to sting us," and he said: "Why not?" Later, on August 27, 1936, plaintiffs, through their attorneys, formally notified the defendants, by registered letter, of their election to cancel the contract and asked for the return of their $300, making formal demand therefor. At the conclusion of the trial, the court dismissed plaintiffs'

petition and rendered judgment against plaintiffs for costs on the ground that the ''equities in this matter are with the defendants.''

Appellees have not favored us with a brief and argument and did not appear to argue the case orally. They each filed separate answers admitting the contract and the down payment but denying generally all other allegations of the petition. The only inkling we have as to appellees' theory must be gleaned from the objections to the testimony and from this we assume the theory of defense to be that Mrs. Miller, who held the record title, but who apparently permitted her husband to act with unlimited authority in this matter, now claims she did not authorize her husband to act for her and is not bound by his fraud and deceit. The defense is ingenious but is not sound. We haven't the least doubt, under the evidence, that Mrs. Miller had full knowledge and acquiesced in her husband's assuming absolute authority in reference to the listing for sale and selling the property; that she knew that he was showing prospective purchasers through the house with Mr. Adkison, a land agent, who had the property listed, and that finally, through the efforts of her husband and Adkison, the deal was consummated, price and terms agreed upon. She signed the contract with her husband and receipted for the down payment which she now has and insists on keeping.

This is not an action to recover damages, but an action in equity to rescind the contract and to recover only the down payment. Under such circumstances, we are satisfied Mrs. Miller may not question her husband's authority to represent her and at the same time retain the fruits of her husband's deceit and fraud, practiced on these plaintiffs. She may not ''repudiate the fraud and yet hold on to its profits.'' Ellison v. Stockton, 185 Iowa 979, at page 993, 170 N. W. 435, at page 440. ''An adoption of the agency in part adopts it in the whole, because a principal is not permitted to accept and confirm so much of a contract made by one *purporting* to be his agent as he shall think beneficial to himself, and reject the remainder. 1 Parsons on Contracts, 50-52.'' Eadie, Guilford & Co. v. Ashbaugh, 44 Iowa 519. In the case of Edwards v. Foley, 187 Iowa 5, 173 N. W. 914, which involved a real estate contract where the negotiations and representations leading up to the sale were made by the father, title being in the son, and in which it was claimed

that the father had no authority to represent the son and who was therefore not bound by the statements or representations of the father, this court said [page 11 of 187 Iowa, page 916 of 173 N. W.]:

"The record discloses very clearly that M. T. Foley did act in the premises, and that the son not only knew that fact, but was present on some of the occasions when his father assumed to act and speak for him. There can be no doubt that the elder Foley took an active and efficient part in bringing about the agreement, and the son cannot have the benefit of an agreement so procured without adopting as his own the acts done and representations made by the father in procuring it."

See, also, John Gund Brewing Co. v. Peterson, 130 Iowa 301, 106 N. W. 741; 2 Am. Jur., Secs. 223, 227; Rader v. Maddox, 150 U. S. 128, 14 S. Ct. 46, 37 L. Ed. 1025; Parsons v. Armor, 3 Pet. 413, 7 L. Ed., 724; 2 C. J., p. 858.

"That an agency may be implied or presumed from the conduct of the parties, no one will deny; and it is a general rule that where a party has so acted as to reasonably warrant the presumption that another is his agent for general or specific purposes, 'whether it be in a single transaction or in a series of transactions, his authority to act for him in that capacity will be conclusively presumed,' so far as it may be necessary to protect third persons who have acted in good faith and with reasonable prudence. Mechem on Agency, section 84: * * *" Grant v. Humerick, 123 Iowa 571, 94 N. W. 510.

Miller was speaking of a matter within his personal knowledge. His answer was in response to a direct question. If he said anything, it was his duty to speak the truth. These purchasers were dealing honestly with Miller, and were innocent of the fraud committed upon them and there isn't the slightest reason to doubt that they completed the transaction relying upon Miller's positive statement. The statement was false, and known by Miller at the time to be false. He admits he "got stung" and said, in effect, "Why not sting the other fellow?" When Mrs. Livingston saw the small heater in one of the upstairs rooms, her suspicions were aroused and, to throw her off her guard, Miller repeated the falsehood. They were shown the large furnace; there wasn't a thing to cause any reasonable man

or woman to doubt Miller's statement that the house was heated throughout by furnace.

We are satisfied that the evidence establishes the deceit and fraud and that, but for such deceit, the contract would not have been entered into and the $300 down payment is the direct fruits of the fraud and deceit. The plaintiffs acted promptly and we think should recover the money paid. The decree of the trial court is reversed and the cause remanded for decree in accordance with this opinion.—Reversed and remanded.

ANDERSON, SAGER, DONEGAN, RICHARDS, KINTZINGER, and MILLER, JJ., concur.