NANCY SHANNON et al., Appellants, v. KEITH W. GAAR et al., Appellees.

No. 46127.

NOVEMBER 17, 1942.

REHEARING DENIED MARCH 19, 1943.

Walter F. Maley and F. G. Ryan, both of Des Moines, for appellants.

Stipp,. Perry, Bannister & Starzinger, and Donald D. Holdoegel, all of Des Moines, for appellees.

GARFIELD, J.— ■ Appellants, both married women, are real-estate brokers who were associated together in the matter in controversy. Appellees Gaar and wife own and operate a typewriter business and appellee Shive is another real-estate broker. All live in Des Moines. On May 15, 1939, appellee K. W. Gaar acquired title to the Eddy Apartments in Des Moines. Appellants claim they were employed by the Gaars to act as their agents in the purchase of the property but that the three appellees conspired together wrongfully to deprive them of their commission. At the close of appellants' evidence the trial court directed a verdict against them, apparently on the theory that the evidence was insufficient to sustain their claim. We will briefly review the evidence offered by appellants. Appellees offered no testimony. Appellants are entitled to have the evidence considered in the light most favorable to them.

Trustees appointed by the Polk County District Court had been ordered to sell the Eddy Apartments, which were "in receivership." Accordingly the trustees listed the property for sale with several real-estate agents. Ninety thousand dollars was the original asking price. About March 24, 1939, Risser, the

active trustee, told appellants the property was to be sold to the highest bidder and suggested they try to find a purchaser. Appellants then made an inspection of the apartment building. They then contacted Mrs. Gaar at the Gaars' place of business in an attempt to interest them in the purchase.

Mrs. Gaar manifested considerable interest and asked appellants to get full information on the income and expense of the apartment. Appellants obtained from Risser, the trustee, a statement of income and cost of operation and made an appointment with him for Mr. Gaar to look over the books in Risser's office. There is evidence that Gaar conferred with Risser pursuant to this appointment. Appellants showed the statement of income and expenses to Mrs. Gaar, who told them again that she and her husband were much interested. "Believe me, we are hot prospects," were her words.

The question of financing was discussed. Mrs. Gaar instructed appellants to make every effort to get a loan on the apartment. They wanted to borrow as much as $60,000 if they could. Accordingly, appellants contacted six different loan concerns. Mr. Hunter told appellants that he thought his company could loan Mr. Gaar $52,000 on the apartment and asked them to have Gaar see him at an appointed time. Appellants reported to Mrs. Gaar the result of their interview with Hunter. There is evidence that Mr. Gaar conferred with Hunter pursuant to the arrangements made with appellants.

In the course of one of the above conversations between appellants and Mrs. Gaar, it developed that appellee Shive, a real-estate broker, had done some business for the Gaars. They had previously listed for sale with Shive a property of their own known as the Colonial Apartments. It also appears that the trustees had listed the Eddy Apartments for sale with Shive, among others, and that he had talked to the Gaars regarding the Eddy property before appellants first contacted them.

When Mrs. Gaar informed appellants of their previous relations with Shive, appellants offered to withdraw if the Gaars preferred to have Shive represent them in attempting to purchase the Eddy Apartments. Mrs. Gaar then said she would talk to her husband regarding the matter and report to ap-

pellants. That evening Mrs. Gaar told one of the appellants over the phone, "My husband is sitting here now, * * * and he said for you to go ahead, Shive has known all along that we wanted the Eddy Apartments and he has not tried to get them for us, * * * he has had his chance."

In the fore part of April 1939, one Gulick had made an offer to buy the property from the trustees for $75,000, provided $2,500 of that amount would be paid to one Nielson, a real-estate agent, who had interested Gulick. Upon learning of this offer, appellants told Mrs. Gaar about it and offered to cut their commission to $2,000. "Mrs. Gaar said she thought that would be all right." Appellant Mrs. Shannon testified:

"We told them [Gaars] we would take $2,000 commission, which would make them a better offer, but *it would have to come from them* as the court paid no commission. * * * *They said it was agreeable.* They thought it was nice of us to cut our commission to help make the deal." (Italics supplied.)

At about this time, appellants apparently were fearful that the Gaars would purchase the property through Shive, or in some other way attempt to deprive them of their commission. They called upon Risser and at his suggestion saw his attorney, told them of their dealings with the Gaars, and asked that they be protected on their commission. The Gaars learned of this move of appellants and professed that it offended them. On April 10th, Mr. and Mrs. Gaar told appellants they had "made a mess of this" by seeing the attorney. Gaar asked appellants "to withdraw from this * * * in favor of Shive," and offered them as an inducement an exclusive listing on Gaar's Colonial Apartments if they would "withdraw." This appellants refused to do. Gaar then told appellants he was through with them and that he would "have those Eddy Apartments" without going through them, intimating that he would deal through Shive. Appellants then "dropped out of the picture."

Two days later a hearing was had before the court on the sale of the apartments. Gulick, through Nielson, offered $75,000 with a deduction of a commission of $2,500. Shive made a tentative offer contingent upon obtaining a loan. The hearing was postponed for two days when, on April 14th, Shive made

an offer of $75,500 net to the trustees without the deduction of any commission. The offer was accepted and the sale to Shive was approved. At this hearing Shive testified under oath he was purchasing the property solely for himself. On May 15, 1939, a deed from the trustees to Shive, a deed from Shive to Gaar, and a mortgage from the Gaars to Hunter's company for $52,600, were placed of record simultaneously. Shortly following the sale and before delivery of the conveyances Gaar had assumed at least partial control of the property. Notwithstanding Shive's testimony that he was purchasing for himself, there is ample evidence that Gaar was the real purchaser.

■ I. Appellees argue that appellants wholly failed to show that Mrs. Gaar was the agent of her husband in dealing with appellants. We are not impressed with the argument. There was sufficient evidence that Mrs. Gaar purported to act not only for herself but for her husband; that Gaar had full knowledge of this, knew what transpired between appellants and his wife, and by clear implication, if not expressly, intended to and did ratify the acts of Mrs. Gaar. Furthermore, by taking the loan from Hunter, Gaar accepted the benefits of his wife's having acted in his behalf and he is in no position now to claim that her acts were unauthorized. Community Sav. Bk. v. Gaughen, 228 Iowa 18, 34, 289 N. W. 727, and cases cited; Smith v. Miller, 225 Iowa 241, 244, 280 N. W. 493; Edwards v. Foley, 187 Iowa 5, 11, 173 N. W. 914.

■ II. Appellants claim that appellees unlawfully conspired together to breach the contract between appellants and the Gaars and carried their plan into effect. As we hereafter point out, the claimed conspiracy is not essential to recovery. Nevertheless, we may observe that a combination between two or more persons to cause a breach of contract is generally recognized as an unlawful conspiracy. The right to the benefits of a contract is a property right which cannot be destroyed without entitling the injured party to damages. Kock v. Burgess, 167 Iowa 727, 733, 149 N. W. 858; Holsinger v. Herring, 207 Iowa 1218, 1225, 224 N. W. 766; Falstaff Brewing Corp. v. Iowa F. & P. Co., 8 Cir., Neb., 112 F. 2d 101, 108; 11 Am. Jur. 582, section 50; 15 C. J. S. 1020, section 13; annotation, 84 A. L. R. 43, 98.

Where, however, the parties are not liable severally for causing the breach of a contract, they are not liable jointly by reason of the allegation of conspiracy. McKay v. Barrick, 207 Iowa 1091, 1094, 224 N. W. 84; 11 Am. Jur. 582, section 50; annotation, 84 A. L. R. 43, 99. Conspiracy does not give rise to a civil action unless something is done pursuant to it which, without the conspiracy, would create a right of action. Dickson v. Young, 202 Iowa 378, 380, 210 N. W. 452; Olmsted v. Maryland Cas. Co., 218 Iowa 997, 998, 253 N. W. 804, and cases cited; Community Sav. Bk. v. Gaughen, 228 Iowa 18, 27, 289 N. W. 727.

III. The first essential of the cause of action here asserted is the existence of a valid contract. Annotation, 84 A. L. R. 43, 48. We think there was evidence from which the jury could find a contract between appellants and Mrs. Gaar for herself and her husband whereby appellants were to act as brokers for them in the purchase of this property and be paid a commission by them for their services. In the court below appellees practically conceded there was evidence of a contract between appellants and Mrs. Gaar. Appellees' principal contentions in the court below and in their written brief here are that appellants failed to prove a conspiracy and failed to prove a contract *with Mr. Gaar* or the authority of Mrs. Gaar to act for her husband. Their motion to direct alleged in substance:

*"As to defendant K. W. Gaar,* plaintiffs have failed to show any agreement on his part to pay any commission to plaintiffs and have failed to show that Mrs. Gaar was the agent of her husband. That plaintiffs have preferred to show only *an agreement by Mrs. Gaar* to plaintiffs to pay a commission for the purchase of the real estate."

In their written brief here appellees state the nature of their defense in these words:

"The defense interposed was that there was no conspiracy proven and that there was no contract established *between Keith W. Gaar* and the appellants." (Italics supplied.)

IV. We think appellants failed to make a case against appellee Shive and as to him the judgment must be affirmed.

44

There is no evidence that Shive knew of the agreement between his codefendants and appellants nor that he acted with any fraudulent purpose to cause a breach thereof or to deprive appellants of their compensation. Appellants are nevertheless entitled to recover from Shive's codefendants if the evidence warrants. In a case of this kind recovery may be had against some of the parties charged. Faust v. Parker, 204 Iowa 297, 306, 213 N. W. 794, 215 N. W. 235; Dickson v. Young, 202 Iowa 378, 380, 210 N. W. 452; Heisler v. Heisler, 151 Iowa 503, 506, 131 N. W. 676; Young v. Gormley, 119 Iowa 546, 549, 93 N. W. 565; 11 Am. Jur. 588, section 59. See, also, Stambaugh v. Haffa, 217 Iowa 1161, 1166, 253 N. W. 137.

■ V. As to appellees Gaar, we think the evidence was sufficient to warrant a jury finding that they unlawfully and in bad faith conspired to deprive appellants of the benefits of their contract and carried that purpose into effect. It is, of course, elementary that a conspiracy may be proven by circumstantial evidence. It is frequently incapable of direct proof. Holsinger v. Herring, 207 Iowa 1218, 1226, 224 N. W. 766; 15 C. J. S. 1043, section 29; 11 Am. Jur. 585, section 56. Concert of action with a purpose to defraud makes a prima facie case. Stambaugh v. Haffa, 217 Iowa 1161, 1163, 253 N. W. 137.

■ VI. Even if there were insufficient proof of a conspiracy between Mr. and Mrs. Gaar, appellants would still be entitled to have the case submitted to the jury upon proof that these appellees acted wrongfully and in bad faith to deprive appellants of the benefits of their contract. We think the evidence would warrant such a finding. The gist of an action such as this is not, as appellees assert, the conspiracy, but the wrong done and the resulting damage. It is well settled that an allegation of conspiracy may be regarded as surplusage and recovery had against all defendants shown to have participated in the wrongful act which results in damage. Dickson v. Young, 202 Iowa 378, 380, 210 N. W. 452, and cases cited; Faust v. Parker, 204 Iowa 297, 306, 213 N. W. 794, 215 N. W. 235; Dunshee v. Standard Oil Co., 152 Iowa 618, 629, 132 N. W. 371, 36 L. R. A., N. S., 263; 15 C. J. S. 1040, 1041, section 27; ibid. 1037, section 25.; ibid. 1031, section 21; 11 Am. Jur. 588, section 59. See Yocum v. Husted, 185 Iowa 119, 125, 167 N. W. 663.

VII. Appellees contend that the Gaars had an absolute right to discharge appellants at any time before they became fully entitled to their commission. If these appellees did merely what they had a legal right to do, they are not liable to appellants, regardless of any claim of conspiracy. Olmsted v. Maryland Cas. Co., 218 Iowa 997, 1003, 253 N. W. 804; annotation, 84 A. L. R. 43, 63. However, it cannot be said as a matter of law that appellees had the absolute right to terminate the agency of appellants.

It is true that a principal who has not employed a broker for a specified period may ordinarily terminate the agency at any time before the broker's compensation is fully earned *provided he acts in good faith.* 8 Am. Jur. 1007, section 39; ibid. 1008, section 41; ibid. 1068, section 143; 12 C. J. S. 43, 45, section 16; annotation, 88 A. L. R. 711, 718. A principal cannot, however, during the course of negotiations instituted by the broker, which are approaching success, revoke his broker's authority as a mere device to escape payment of a commission. This is especially true where the time that has elapsed since the broker was employed has not been unreasonable, where a sale is completed soon after the broker's authority is revoked, and the principal benefits from the broker's services. The important and usually the controlling consideration in such cases is the good or bad faith of the principal as shown by the circumstances. Annotation, 88 A. L. R. 716, and cases cited 720, 721; 8 Am. Jur. 1066, section 141; ibid. 1068, 1069, section 143; 12 C. J. S. 150, 151, 152, section 66; II Restatement of Agency, 1069, 1070, section 454; Goodman v. Marcol, 261 N. Y. 188, 184 N. E. 755, 88 A. L. R. 714. See Benton v. Brown, 145 Iowa 604, 124 N. W. 815; Reynor v. Mackrill, 181 Iowa 210, 216, 164 N. W. 335, 1 A. L. R. 523; Kellogg v. Rhodes, 231 Iowa 1340, 4 N. W. 2d 412, 415.

The evidence here would warrant a finding that appellants had not been employed for an unreasonable time and that the negotiations were nearing a successful completion. Mr. Gaar announced definitely to appellants on April 10th: "I will have those Eddy Apartments," and, "There are other ways of getting them besides going through you." A finding would be justified

that appellants' efforts were the moving cause of Gaar's decision to purchase. The jury could find that on April 12th, Gaar submitted a bid through Shive; that another such bid was made and accepted on April 14th; that Gaar attempted to conceal the fact that he was the purchaser by having Shive act as a "straw man." The purchase price was about the figure appellants and Mrs. Gaar had talked of. Gaar availed himself of the offer of Hunter made through appellants to loan $52,000 on the premises.

The only excuse offered by the Gaars for asking appellants "to withdraw" was that they had interviewed Risser and his attorney in an attempt to protect their right to a commission. It was not improper for appellants to see the trustee and his attorney. The finding is warranted that the Gaars did the very thing that appellants feared—attempted wrongfully to deprive them of their commission; that the excuse given by Mr. and Mrs. Gaar for revoking appellants' authority was a mere device to avoid paying a commission.

As to appellee Shive, the judgment in his favor is affirmed. As to appellees Gaar, the judgment is reversed.—Affirmed in part; reversed in part.

WENNERSTRUM, C. J., and STIGER, SAGER, BLISS, OLIVER, HALE, and MILLER, JJ., concur.