**STAUFFER CHEMICAL COMPANY,**
Plaintiff,

v.

**ALLIED GAS & CHEMICAL COMPANY, Defendant.**
Civ. No. 10–248–C–2.

United States District Court,
S. D. Iowa, C. D.
May 18, 1971.

Leo E. Gross and David J. Blair, Des Moines, Iowa, for plaintiff.

B. A. Webster and Brent B. Green, Des Moines, Iowa, for defendant.

## MEMORANDUM AND ORDER.

HANSON, District Judge.

This ruling is predicated upon plaintiff-manufacturer's motion for temporary injunctive relief seeking to enjoin defendant from selling plaintiff's product below the minimum fair trade price.

The Court finds that it has jurisdiction under 28 U.S.C., Section 1332.

Plaintiff, Stauffer Chemical Company, Incorporated, seeks to restrain defendant from advertising for sale or selling plaintiff's product "Sutan" at retail prices less than those stipulated in contracts which plaintiff has with other dealers and distributors in the State of Iowa. There is no fair trade contract between plaintiff and defendant. At this stage of the proceedings, there is no evidence as to the existence of a fair trade contract between plaintiff and defendant's supplier or suppliers in as much as defendant has not identified its supplier(s).

### I.

At the hearing before this Court on April 19, 1971, the plaintiff called several witnesses who testified, *inter alia*, to the following:

1) Plaintiff presently has Fair Trade Agreements with 1185 retail dealers or outlets in the State of Iowa.

2) Among plaintiff's products distributed under its Fair Trade Agreements is a selective herbicide applied to corn fields, bearing plaintiff's trademark, brand or name, known as "Sutan".

3) At all times material to this proceeding, the Fair Trade minimum retail price of Sutan was $10.15 per gallon, pursuant to Schedule A as incorporated into the Fair Trade Agreement.

4) Paragraph No. 2 of the Fair Trade Agreement provides, "Reseller will not sell, nor advertise for sale any product at less than such minimum selling price to consumers for the purpose of discontinuing dealing in such product unless Reseller shall, at least ten (10) days before the sale, first offer its entire stock of such product to Stauffer at the price at which Reseller purchased such stock. Any such stock may be sold without reference to this Agreement if and when the goods are damaged or deteriorated in quality, and notice thereof is given to the public."

5) Plaintiff's policy is to not repurchase dealers' inventories unless and until termination of the Fair Trade Agreement between plaintiff and the dealer and the latter's discontinuance of sales.

6) During calendar year 1970, plaintiff sold between 150,000 and 175,000 gallons of Sutan within Iowa. Plaintiff estimates that its sales of Sutan in Iowa for calendar year 1971 will total between 210,000 and 220,000 gallons. The amount of Sutan sold varies seasonally with the major volume of sales occurring during the months of February, March and April.

7) Plaintiff's costs for the research entailed in the development of Sutan were from $700,000 to $800,000.

8) Plaintiff's budget for the national advertising of Sutan in 1970 totaled $400,000, and will total approximately $650,000 for the 1971 season.

9) While the Fair Trade Agreements for retail price maintenance run directly between plaintiff and the retail dealers, plaintiff does not sell Sutan directly to the majority of retail dealers, but sells instead to a smaller number of wholesale distributors who in turn resell to the retail dealers. Plaintiff's contracts with its wholesale distributors require them to wholesale Sutan only to those retail dealers who are signatories to Fair Trade Agreements with the plaintiff

10) Plaintiff does not establish or require a wholesale price at which the distributors resell to the retail dealers (although plaintiff "suggests" a wholesale price of $8.95 per gallon). In addition, plaintiff and every wholesale distributor have entered into Fair Trade Agreements so that the wholesale distributor may directly retail Sutan. The individual distributors determine, independently of plaintiff, the respective portions of their purchases that will be sold wholesale to dealers or retailed directly to consumers.

11) Plaintiff maintains a system of code numbers for all distributors of Sutan. The containers of all stock are identified with the number of the respective distributor to which the stock is shipped, the number being written on the container with a marking pen. This system of marking the code numbers is designed to endure throughout the resale process.

12) Defendant, an Iowa corporation with its principal place of business at Oskaloosa, Iowa, entered into a Fair Trade Agreement with plaintiff in December 1967. The Agreement was terminated in August, 1970.

13) The defendant, through its Manager and Vice-President, Jerry D. Fleener, offered defendant's inventory of Sutan to plaintiff as early as January, 1970. Plaintiff did not pick up defendant's inventory until January 5, 1971. Plaintiff paid defendant for the amount of Sutan returned by a check dated March 19, 1971.

14) Defendant's Manager, Jerry Fleener told Jack R. Tredinnick, Iowa Sales Representative for plaintiff, at the time that plaintiff repurchased the remaining stock of Sutan that defendant could obtain material from an out-of-state supplier.

15) On January 13, 1971, an advertisement appeared in an Oskaloosa newspaper listing Sutan for sale at the price of $7.80 per gallon at defendant's place of business. Within one or two days, plaintiff's Sales Representative, Mr. Tredinnick, had received telephone calls from some or nearly all of the five dealers in Oskaloosa with whom plaintiff has Fair Trade Agreements, complaining about defendant's sale of Sutan below the Fair Trade price.

16) During the first week of March, 1971, Thomas J. Thomlinson, Area Sales Manager for plaintiff, observed six containers of Sutan purchased from defendant by another Stauffer dealer. The identifying code numbers had been removed from the containers.

17) On March 29, 1971, Frank D. Lau, an investigator retained by plaintiff, purchased four 5-gallon containers of Sutan from defendant at the price of $8.29 per gallon.

18) Since plaintiff issued its check on March 19, 1971, in payment for defendant's returned stock, Mr. Tredinnick has continued receiving complaints concerning defendant's sale of Sutan at prices below the Fair Trade schedule.

Defendant's Manager and Vice-President, Jerry D. Fleener, testified:

1. That the stock of Sutan returned to plaintiff on January 5, 1971, represented defendant's entire inventory at that time.

2. Since January 5, 1971, defendant has sold some two thousand gallons of Sutan at prices of $7.80, $8.29 and $9.27 per gallon; some 200 gallons have been sold since receiving plaintiff's check in March.

3. The above sales represent new inventory which defendant has purchased from an unrevealed source since returning its earlier inventory on January 5, 1971.

4. Defendant intends to continue its practice of selling Sutan at prices below that scheduled in plaintiff's Fair Trade Agreement schedule unless restrained by judicial order.

## II.

The Supreme Court of Iowa has ruled that the nonsigner provision of the Iowa Fair Trade Act, Section 550.3, Code, 1958, I.C.A., represents an unconstitutional delegation of legislative authority and is unenforceable. Bulova Watch Co.

v. Robinson Wholesale Co., 252 Iowa 740, 108 N.W.2d 365 (1961). Unable to maintain a cause of action under the statute, plaintiff relies upon a theory of tortious interference with contract relations which attempts to capitalize upon one or more as yet unsupported hypotheses. Plaintiff reasons that, in as much as defendant is not a Stauffer dealer, any purchases by the defendant from an unknown distributor represent an inducement to that distributor to violate its own distributorship contract with plaintiff which provides that Stauffer products will be wholesaled only to Fair Trade signatories. Alternatively, if defendant is purchasing his inventory from another dealer, then defendant must be procuring that dealer's breach of its own Fair Trade Agreement since the dealer would obviously be selling below the scheduled minimum price.

■ Wrongful interference with contractual relations is actionable under the Iowa law. Kock v. Burgess, 167 Iowa 727, 149 N.W. 858 (1914); Shannon v. Gaar, 233 Iowa 38, 6 N.W.2d 304 (1942); Wilson & Co. v. United Packinghouse Workers of America, 181 F. Supp. 809 (S.D.Iowa 1960); To date, this theory has never been employed in fair trade litigation in Iowa, and, at best, is germinal in its development in other jurisdictions where the authority is in conflict. Revere Camera Co. v. Masters Mail Order Co., 128 F.Supp. 457 (D.Md.1955); Sunbeam Corp. v. Payless Drug Stores, 113 F.Supp. 31 (N.D.Cal. 1953); Sunbeam Corp. v. Economy Distributing Co., 131 F.Supp. 791 (E.D. Mich.1955); Sunbeam Corp. v. Masters of Miami, Inc., 225 F.2d 191 (5 Cir. 1955).

There are, of course, many types of privileged conduct in which a third party may engage that "interfere" with business relations between other parties. See A.L.R.2d 1227 et seq.; Restatement, Torts, Section 766. In this regard, plaintiff has hypothesized that defendant is engaging in non-privileged conduct but has not presented evidence as to whether Sutan is distributed and

available in states where Fair Trade Agreements are not sanctioned by state or public policy. At this stage, however, the Court need not consider the ultimate evidentiary or legal merits of plaintiff's cause. It is sufficient that plaintiff appears to have presented a facially viable claim.

■ The cases establishing the rules for granting preliminary injunctive relief are legion. It would serve little purpose to recite the doctrines of "status quo," "foreseeable" and "irreparable injury," and "public interest." See generally 7 Moore's Federal Practice, Para. 65.04, pp. 1625–1629, and cases cited therein. The question confronting the Court at this juncture is relatively apparent if nonetheless perplexing. Plaintiff fears that if Allied is permitted to continue its course of dealings even during the pendence of litigation, other present dealers will be encouraged to follow defendant leading to an irreparable collapse of plaintiff's Fair Trade program. Not surprisingly, plaintiff currently is able to introduce little direct evidence to substantiate its fears although the Court has no doubt that should defendant's acts indeed be privileged, plaintiff may not be able to avoid the setting of the sun on its mercantile empire.

The defendant contends of course that there is no present showing that its acts are illegal, and consequently that it should not be required to forego its present competitive advantage.

This Court previously issued a temporary restraining order directing the defendant to refrain from selling Sutan at retail prices below those specified in plaintiff's schedule of minimum prices. It is incumbent upon the Court to attempt to protect the interests of both parties and to not give either undue advantage of what would amount to final determination on the merits of the controversy.

Accordingly, it is ordered that the Temporary Restraining Order entered by this Court on April 15, 1971, and as modified and extended following the

Show Cause Hearing on April 23, 1971, be and hereby is vacated in its entirety.

It is further ordered that the Defendant, its officers, agents, employees, assigns and successors be and hereby are directed to desist, halt and refrain from advertising for sale, offering for sale and selling any and all products bearing Plaintiff's name, trademark or brand including Sutan$^R$, in containers of any kind which have been defaced, or had plaintiff's markings thereon altered or removed or otherwise obliterated, specifically including the distributor code numbers placed thereon.

It is further ordered that the Defendant be and hereby is directed to make, maintain and preserve records of its purchases and sales of all products bearing Plaintiff's name, trademark or brand including Sutan$^R$, the quantities thereof, and prices paid and received therefor.

It is further ordered that the affirmative relief granted herein shall continue until future Order by this Court.